46153, 46154. SAUNDERS et al. v. PADOVANI; and vice versa.

(375 SE2d 853)

HUNT, Justice.

In August of 1982 Norma Padovani met Joe Clyde Partain at a church dance in Atlanta. He was some 25 years her senior. They maintained a very close relationship and were eventually married in the fall of 1984. In June 1984, Partain suffered a stroke, became partially paralyzed and was confined to a wheelchair. On September 27, 1984, while he was recuperating in a nursing home in Roswell, he was taken by Padovani to a Cobb County magistrate's office and they were married. Following the ceremony she took him to the office of a Marietta attorney who, two days earlier, had prepared a will for him. While sitting in the automobile, Partain executed a will leaving the bulk of his sizeable estate to Padovani and leaving nothing to his blood relatives. Three months later he was dead.

Two brothers and a nephew filed this action to annul the marriage on the ground that Partain was mentally incompetent. The jury, however, after hearing, *inter alia*, a tape recording made of the conversation between Partain and his lawyer at the time of the preparation of the will, refused to invalidate the marriage. The heirs appeal in case number 46153, challenging only the admissibility of the tape recording. Padovani's cross-claim, case number 46154, claims error in the denial of her motion for summary judgment on the issue of the heirs' standing to challenge her marriage.

*Case No. 46153*

Over the heirs' objection a tape recording of Partain's conversation with his attorney, Ben Moore, regarding the provisions of his will was admitted into evidence. The discussion occurred two days before the marriage and the execution of the will. Moore, who did not know Partain before this meeting, went to the nursing home to interview him. Padovani was present. Moore testified that Partain, despite his paralysis, knew what he was doing, knew what property he had, and

knew what he wanted to do with it. Concerned that there may be a later challenge to this will, Moore brought a small, hand-held microcassette to tape record their conversation. When he returned to his office, his partner transferred the microcassette conversation to a standard tape for preservation. In making the re-recording, the partner made several explanatory remarks on the tape. For example, by way of introduction, he stated the date and the names of the parties to the conversation. He described the fact that, at a certain point, he was turning the microcassette over. He explained the abrupt ending of a statement by Padovani by stating that the microcassette had run out on both sides at that point. Moore testified that the re-recording was an accurate reflection of the conversation among the three of them as he recalled it, although he conceded that he was hard of hearing and that the tape was in part difficult to understand. The partner testified that he did not listen to the tape other than to make the above stated remarks and to check that the tape recorder was working. He testified that he made no changes, alterations or deletions to the tape. He explained that the original microcassette was no longer available because it had been used again after the standard tape was made and placed in the client's file.

The heirs' objection to the tape's admissibility was on two grounds. First they complained that its existence was not revealed to them until after the pretrial order had been filed and that its proposed use was not included in the pretrial order. Second, they contended it lacked proper authentication under the 7-part test referred to in *Steve M. Solomon, Inc. v. Edgar*, 92 Ga. App. 207, 211 (88 SE2d 167) (1955), adopted with approval by this court in *Estes v. State*, 232 Ga. 703, 710 (208 SE2d 806) (1974), and relaxed a bit in *Harris v. State*, 237 Ga. 718, 724 (230 SE2d 1) (1976).

1. A pretrial order was entered in this case more than a year before the trial commenced. Neither the existence nor proposed use of the tape recording was mentioned.[1]

It is unclear as to when counsel for Padovani first knew of the existence of the tape. But, assuming its existence was known in advance of the pretrial order, the amendment of such order and the permission to tender the tape were within the sound discretion of the trial judge and we do not believe that he abused his discretion in this instance. OCGA § 9-11-16 (b). The tape's content was, after all, a conversation about which the heirs were entirely familiar. They received a copy at the beginning of this four-day trial and were given full opportunity to hear it and question Moore and his partner during a

---

[1] Assuming that a tape recording comes under documentary or physical evidence, it was not listed. However, Ben Moore and his law partner were listed as witnesses and the partner's primary contribution was to authenticate the tape recording.

number of recesses. No harm from its omission from the pretrial order has been shown.

2. Nor do we find error in the admission of the tape for lack of proper authentication. Keeping in mind the issue in the case, which was Partain's mental capacity to enter into a contract of marriage, the tape was admissible as evidence of that capacity two days before the wedding. The challenge to its authenticity and correctness is based primarily on the fact that it is a re-recording of a tape no longer in existence and that Moore's partner made additions to the tape in the re-recording process. We agree with the trial judge that the evidence was sufficient to meet the conditions of *Solomon,* supra. No other standards have been set to determine the authenticity of a reproduction of a tape as opposed to the tape itself. We know of no requirement that the reproduction must be, in court, compared with the original. The trial court's decision would have been easier, perhaps, if the lawyer who processed the reproduction had compared its contents to that of the original and had so testified. However, we think that Moore's testimony that the reproduction was the same as the actual conversation in which he participated was sufficient to meet the existing standard. The additions to the tape by his partner were either self-explanatory or sufficiently explained by him.

### Case No. 46154

Because of our holding above, the issue in the cross-appeal becomes moot. But as to the heirs' standing, see *Medlock v. Merritt,* 102 Ga. 212, 215 (29 SE 185); OCGA § 19-4-3.

*Judgment in Case No. 46153 affirmed; judgment in Case No. 46154 dismissed as moot. All the Justices concur.*

DECIDED FEBRUARY 15, 1989.

*Hurt, Richardson, Garner, Todd & Cadenhead, Pierre Howard, James J. Brissette,* for appellants.

*Custer, Hill & Clark, Douglas A. Hill,* for appellee.