A97A0753, A97A0754. FORD et al. v. SAINT FRANCIS HOSPITAL, INC.; and vice versa.
(490 SE2d 415)

BEASLEY, Judge.

Ford entered Saint Francis Hospital for heart surgery, including a double bypass graft and an aortic valve replacement. During surgery he contracted a nosocomial (i.e., acquired in the hospital) staphylococcus infection of the aortic valve which required a second operation to replace the valve and to insert a pacemaker, which resulted in numerous other negative consequences. Ford and his wife sued the hospital, alleging several claims but not including professional malpractice.

The complaint's basic contention is that Saint Francis maintained a dirty environment in and around its operating rooms. The first count was for simple negligence based on a failure to provide clean and sterile facilities and equipment, failure to inform Ford of the risk of acquiring nosocomial staphylococcus, maintaining inadequate infection control procedures and negligently administering the procedures it had, and "failure to exercise due care in the face of factual and medical circumstances" which revealed an unreasonably high incidence of staphylococcus among patients.

The second count alleged premises liability in that the hospital failed to keep its premises safe from defects, in this case bacteria, and failed to warn Ford of the dangerous conditions. The third count was failure to warn of the hazard of infection attendant to undergoing surgery in the hospital. The complaint also asserted a claim

under the Georgia Fair Business Practices Act ("FBPA"), OCGA § 10-1-390 et seq., based on misrepresentation to the public and referring physicians of the quality of the hospital's services and facilities. Subsequently abandoned was another claim for breach of contract based on a failure to provide sanitary facilities. Finally, the complaint asserted that punitive damages were appropriate because the hospital's tortious acts were done with a wanton and reckless disregard of Ford's health.

The complaint was served on the hospital on November 1, 1995. The hospital did not answer, and 48 days later, on December 19, the court entered default against the hospital with damages to be proved at trial. On December 28, Saint Francis filed a motion to "Open Default or in the Alternative to Set Aside Judgment." It was accompanied by payment of costs, a verified answer, an announcement that Saint Francis was ready to proceed with trial, and affidavits seeking to explain the failure to timely answer. The answer denied liability on all counts and raised as a defense that the complaint was subject to dismissal because an affidavit setting forth at least one act of professional malpractice was required by OCGA § 9-11-9.1 but not contemporaneously filed. The answer also asserted the defense of assumption of the risk.

After hearings on the motion to open default, the court opened the default on February 23, 1996, and accepted the answer as timely filed. On March 21, the hospital filed a motion to dismiss based on a failure to comply with OCGA § 9-11-9.1. The court did not enter a written order denying the motion to dismiss but orally denied it prior to trial, which began on April 15.[1]

After a week of trial and approximately three hours of deliberation on the theories of ordinary negligence, premises liability, and failure to warn, the jury returned a verdict in favor of the hospital which was made the judgment of the court. The Fords' motion for new trial was denied, and the Fords appealed (Case No. A97A0753). The hospital filed a cross-appeal (Case No. A97A0754).

## Case No. A97A0753

1. The Fords first enumerate error in the court's opening the default. OCGA § 9-11-55 (b) allows the court to open a default before final judgment in certain circumstances. "[A] default may be opened if the [hospital] satisfied the four conditions and one of the three grounds for opening a default. The four conditions are: (1) showing

---

[1] The court stated "the record is replete with what the court has done on that matter and I have no more to say about that," but the record here does not show any written disposition of the motion.

made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed to trial, and (4) setting up a meritorious defense. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) a proper case. [Cit.] Whether to open the default on one of the three grounds rests within the discretion of the trial judge. [Cit.]" *Bryant v. Haynie*, 216 Ga. App. 430, 431 (1) (454 SE2d 533) (1995). If the four conditions are not met, the court cannot exercise its discretion to open the default. *C. W. Matthews Contracting Co. v. Walker*, 197 Ga. App. 345, 346 (1) (398 SE2d 297) (1990).

The Fords assert that the hospital did not set forth a meritorious defense. "Georgia law requires that facts regarding such a defense be set forth, and a mere statement . . . that the party 'has a good and meritorious defense to the declaration' is inadequate." *Coleman v. Dairyland Ins. Co.*, 130 Ga. App. 228, 229 (202 SE2d 698) (1973). The latter is a mere conclusion. *Ga. Hwy. Express Co. v. Do-All Chemical Co.*, 118 Ga. App. 736, 737 (165 SE2d 429) (1968). The verified answer was accompanied by the affidavit of the hospital's Director of Infection Control, a registered nurse, who averred that the hospital infection control practices met the requisite standards of care. The answer also set forth the defense of assumption of the risk based upon Ford's signing a consent form in compliance with OCGA § 31-9-6.1. As it turned out, the meritorious nature of the hospital's defense was confirmed by the verdict. Although these defenses were not set out in great factual detail, they are sufficient to satisfy OCGA § 9-11-55 (b). See *Pinehurst Baptist Church v. Murray*, 215 Ga. App. 259, 261-262 (1) (450 SE2d 307) (1994).

The Fords insist the court nonetheless abused its discretion because of the absence of a valid ground for excusing tardiness. The affidavit of the hospital's risk management officer showed it was his duty to forward the complaint to counsel and the hospital's insurer. He averred he received the complaint on November 1, 1995, but did not know exactly why it was not answered. On learning of the default, he contacted the hospital's attorneys; they had no knowledge of the complaint. The affiant considered it possible he had overlooked the complaint as the hospital had seven similar nosocomial infection cases at the same time. When the complaint arrived, he believed the hospital's standard procedure would result in an answer being filed in this case, as in the others which preceded it.

The court's order opening the default states no basis. At the hearing the day before entry of the order, the court stated it would open the default because there were nine similar cases, the court saw no reason this case should not be tried as the others, this was a significant case, and considering the possible prejudices involved, plaintiffs would be less harmed by opening than defendant would be by denying the motion. Although the court should specify the ground

and underlying facts on which it exercises its discretion, we will presume it was based on the "proper case" ground, the broadest of the three. See *Miller v. Tranakos*, 198 Ga. App. 668, 670 (1) (402 SE2d 772) (1991); *Colonial Penn Life Ins. Co. v. Market Planners Ins. Agency*, 209 Ga. App. 562, 563 (434 SE2d 124) (1993). We will not interfere unless the court's discretion was manifestly abused. *Miller*, supra.

" 'The rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations. Whenever possible cases should be decided on their merits for default judgment is not favored in law. Generally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense. In determining whether a situation is extreme, among the factors which may be considered, but which will not standing alone authorize the opening of default pursuant to OCGA § 9-11-55 (b), are: whether and how the opposing party will be prejudiced by opening the default; whether the opposing party elected not to raise the default issue until after the time under OCGA § 9-11-55 (a) had expired for the defaulting party to open default as a matter of right; and whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed. Further, any additional delay occasioned by a failure to file promptly for opening default upon its discovery can be considered in determining whether defendants' neglect was excusable.' . . . [Cit.] Nevertheless, the facts in each case are different and the court must look at each case in the light of the facts peculiar thereto. [Cit.] In determining whether to open or to decline to open default, a trial judge 'is always required to exercise a legal discretion, and in order to do that, some facts must be proven before him which warrant the exercise of legal discretion.' . . . [Cit.]" *Ryles v. First Oglethorpe Co.*, 213 Ga. App. 327, 328-329 (1) (444 SE2d 578) (1994). See also *Strickland v. Galloway*, 111 Ga. App. 683, 685 (143 SE2d 3) (1965) (construe OCGA § 9-11-55 (b) liberally to promote justice and the establishment of the truth).

The Fords do not show they faced prejudice by the opening of default. Further, they did not seek default until the time for opening as a matter of right under OCGA § 9-11-55 (a) had passed. The hospital acted promptly when it learned of the default, filing its motion to open nine days after default had been entered. No particular delay was caused; to the contrary, the case was tried less than six months after the complaint was filed. In permitting the dispute to be resolved on its merits through a rigorous test to find the truth, the court did not abuse its discretion.

2. The Fords contend the court erroneously denied their motion

for directed verdict on negligence per se, which motion was based solely upon a finding by the state's Department of Human Resources ("DHR") that the hospital was not in compliance with federal regulations governing infection control. See OCGA § 51-1-6; 42 CFR 482.42 (a); *Cardin v. Telfair Acres of Lowndes County*, 195 Ga. App. 449, 451 (2) (393 SE2d 731) (1990). The hospital does not contest that the regulations intended to protect Ford from the type of harm he suffered, see *Horney v. Panter*, 204 Ga. App. 474, 476 (2) (420 SE2d 8) (1992), but rather that when Ford's operation was performed, DHR had found the hospital in compliance with relevant regulations.

The report of a violation is dated January 15, 1993. DHR made a further study and, on July 23, 1993, found the hospital was not in compliance. On October 21, 1993, DHR informed the hospital that, based on a further visit, the hospital was then in compliance. Ford's operation was performed on November 1, 1993. As there was evidence the DHR had most recently determined that the hospital was in compliance, and the Fords presented no evidence of what the applicable state and federal infection control regulations were, the court properly denied the motion for directed verdict.

3. The Fords contend the court erred in directing verdicts for the hospital on the Fords' claims of fraud,[2] violations of the Georgia Fair Business Practices Act, and punitive damages, but it did not err. The Fords based punitive damages on the fraud and FBPA claims, founded in part on representations made to the general public about the quality of the hospital's facilities and service. Fraud and the FBPA require reliance on the misrepresentations. See *Gary v. E. Frank Miller Constr. Co.*, 208 Ga. App. 73, 75 (2) (430 SE2d 182) (1993); *Lynas v. Williams*, 216 Ga. App. 434, 437 (3) (b) (454 SE2d 570) (1995).

Both Mr. and Mrs. Ford testified that the surgeon decided where to perform the surgery, without their participation in the selection. The Fords chose the surgeon because of his reputation, and the surgeon designated Saint Francis, where he performs all his surgery. There is no evidence supporting a supposition that Dr. Brewer relied upon, or even knew of, any public assurances by the hospital about its level of care. He did not even rely on, or know of, the hospital's reported infection rates but kept, and relied on, his own data.

The Fords also assert the hospital had a duty to reveal it was in violation of state and federal regulations, because of a confidential relationship between the Fords and the hospital. See OCGA § 23-2-53. First, they contend such a relationship existed because the hospital exerted "a controlling influence" over their will in choosing to use

---

[2] The complaint was amended at trial to add this count.

Saint Francis' facilities. See OCGA § 23-2-58. As noted above, the hospital did not "influence" them to use Saint Francis; the surgeon chose the hospital. Second, as stated in Division 2, DHR had informed the hospital it was in compliance prior to Ford's surgery.

4. The Fords enumerate as error the court's refusal to give requested charges on agency, assumption of risk limitation, negligence per se, presumption of continuance, and presumption from failure to produce evidence. As to all but the charge on presumption of continuance, the objection was simply by reference to the number of the charge. This is insufficient to meet the requirements of OCGA § 5-5-24 (a). *Lissmore v. Kincade*, 188 Ga. App. 548, 551 (4) (373 SE2d 819) (1988). The omission of these charges is not harmful error as a matter of law so as to require consideration under OCGA § 5-5-24 (c).

As to the requested charge on presumption of continuance, the Fords contend it is authorized by OCGA § 24-4-21, which refers to presumptions of law. Such a presumption grounded on the DHR finding of a violation of federal and state regulations disappeared with DHR's later finding the hospital in compliance, before Mr. Ford's surgery. Moreover, the jury heard ample evidence about the hospital's condition during the period in which it was found in violation, continuing through the time of the surgery, so any error in failing to give this charge was harmless.

5. The next question is whether the court was required to strike prospective juror Garrard for cause under OCGA § 15-12-135, because she: (1) is retired from a health care facility affiliated with Saint Francis, (2) her daughter is an employee at the same facility, (3) Garrard volunteered at Saint Francis, (4) she had received a letter the President of Saint Francis had sent to staff and volunteers informing them of this and similar lawsuits and expressing the opinion that all claims would be dismissed, and (5) her husband had made a financial contribution to Saint Francis.

Relation to an employee of the defendant corporation does not render her incompetent to be a juror. *Pheil v. Southern Bell Tel. &c. Co.*, 201 Ga. App. 846 (1) (412 SE2d 609) (1991). None of the cited characteristics suggests she had any financial interest in the outcome of the case, and the court found she could be fair and impartial in accordance with her testimony. The court did not abuse its discretion in refusing to excuse her. Id.

6. The Fords contend it was error to deny their motion for new trial. As there was some evidence to support the verdict, this enumeration fails. *Lofty v. Fuller*, 223 Ga. App. 95, 97 (2) (477 SE2d 30) (1996).

*Case No. A97A0754*

7. The hospital contends the court erred in denying its motion to dismiss the complaint for failure to comply with OCGA § 9-11-9.1 and in denying its motion for directed verdict based on lack of proximate cause. Our affirmance in Case No. A97A0753 moots the cross-appeal. See *Saunders v. Padovani*, 258 Ga. 866 (375 SE2d 853) (1989); *Holmes v. Univ. Health Svcs.*, 205 Ga. App. 602 (423 SE2d 281) (1992); *Bryson v. Button Gwinnett Savings Bank*, 205 Ga. App. 668, 669 (1) (423 SE2d 691) (1992).

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Smith, J., concur. McMurray, P. J., Ruffin and Eldridge, JJ., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent because, in my view, the trial court erred in directing a verdict for the Hospital on the Fords' fraud and Georgia Fair Business Practices Act claims. I also believe the trial court erred in excluding the possibility of recovery on the Fords' negligence per se claim. Although the trial court denied the Fords' motion for directed verdict with regard to this claim, the trial court's ruling excluding recovery based on negligence per se was the same as if the trial court had directed a verdict for the Hospital on the Fords' negligence per se claim. " 'A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict.' *Carver v. Jones*, 166 Ga. App. 197, 199 (3) (303 SE2d 529) (1983). Even 'slight' evidence was regarded as sufficient to prevent the devastations of a directed verdict, in *Worth v. Ga. Farm &c. Ins. Co.*, [174 Ga. App. 194 (330 SE2d 1)]. Where there is 'some evidence,' or 'any evidence' supporting the respondent's assertions, disputed issues are created which are for jury resolution. *United Fed. Savings &c. Assn. v. Connell*, 166 Ga. App. 329, 330 (1) (304 SE2d 131) (1983)." *Grabowski v. Radiology Assoc., P.A.*, 181 Ga. App. 298, 301 (3) (352 SE2d 185).

*Negligence Per Se.* The majority excludes any possibility that the Hospital was not in compliance with state and federal infection control regulations at the time of Mr. Ford's surgery on November 1, 1993, because a month and a half before the surgery (September 15, 1993) the Hospital passed DHR's surprise infection control inspection. This inspection, however, was not a final testimonial of the Hospital's inspection control practices; it was simply to ensure the Hospital's compliance with a plan that was specifically designed to correct the Hospital's already determined inadequate infection control practices. Just because the Hospital passed this surprise inspection (a month and a half before Mr. Ford's surgery) does not mean, as a

matter of law, the Hospital was in compliance with the applicable state and federal infection control regulations at the time of Mr. Ford's surgery. In my view, proof that the Hospital was under DHR scrutiny shortly before Mr. Ford's surgery for regulatory infection control violations, that Mr. Ford contracted a serious infection the applicable regulations were designed to prevent, and that several other patients at the Hospital had been similarly infected raises genuine issues of material fact as to the Hospital's compliance with the applicable state and federal infection control regulations. I therefore believe the trial court erred in excluding the possibility of recovery on the Fords' negligence per se claim.

*Fraud and Fair Business Practices Act.* Affirming the trial court's directed verdict on these claims, the majority reasons only that the essential element of the Fords' reliance on the Hospital's quality assurances is missing because Mr. Ford's physician, not the Fords, chose the venue of Mr. Ford's surgery. This logic may appear wide but, in my view, is not very deep. For instance, the jury may well have concluded that the Hospital's public assurances regarding its high quality of care influenced Mr. Ford's physician (his agent) as well as the Fords' decision to proceed with surgery at the Hospital. I believe the jury should have been given a chance to measure these alleged reliances.

I am authorized to state that Judge Ruffin and Judge Eldridge join in this dissent.

DECIDED JULY 11, 1997 —
RECONSIDERATION DENIED JULY 31, 1997 — 

*Pope, McGlamry, Kilpatrick & Morrison, Charles N. Pope, Paul Kilpatrick, Jr., William U. Norwood III, Teresa P. Majors, Samuel W. Oates, Jr.,* for appellants.

*Allen & Peters, Paul E. Weathington, Gary R. McCain, Michael D. Flint, Hatcher, Stubbs, Land, Hollis & Rothschild, James E. Humes II, Robert C. Martin, Jr.,* for appellee.