A09A1326. NORTHPOINT GROUP HOLDINGS, LLC et al.
v. MORRIS.
(685 SE2d 436)

MILLER, Chief Judge.

Dan Morris served NorthPoint Group Holdings, LLC and Point Satellite, LLC (the "defaulting defendants"), among others, with his complaint for breach of contract, injunctive relief, and attorney fees. The defaulting defendants failed to file timely answers and then moved to open default after the expiration of the 15-day statutory grace period[1] but before the entry of final judgment. The trial court denied the motion to open default and entered judgment in favor of Morris. On appeal, the defaulting defendants claim that the trial court erred (i) in concluding that this was not a proper case to open default and (ii) in awarding damages to Morris, notwithstanding the default. Finding that the trial court properly declined to open the default in light of the defaulting defendants' failure to provide a reasonable explanation for their failure to file a timely answer, and that the trial court correctly awarded liquidated damages, we affirm.

---

[1] OCGA § 9-11-55 (a).

1. "On appellate review of a trial court's order granting [or denying] a motion to open default, we must determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case." (Citation and punctuation omitted.) *Ga. Kidney &c. Specialists v. Fresenius USA Marketing*, 291 Ga. App. 429, 431 (2) (662 SE2d 245) (2008) (considering appellant's claim that trial court erred in denying its motion to open default). The evidence showed that Morris sued seven defendants, including six corporations or limited liability companies which were affiliated by reason of common or shared ownership, and an individual, Bob Alvarez. Morris claimed that the defendants, including the defaulting defendants, refused to pay him his share of a real estate commission arising out of the sale of a condominium development.

The defendants other than the defaulting defendants were served on April 15 or April 16, 2008 and answered on May 15, 2008. Robert F. Goodman, Jr., the registered agent for the defaulting defendants, was served with the summons and complaint on April 28, 2008. The following day, Larry Milder, a manager for Point Satellite, received correspondence from a paralegal with Goodman's office stating that she was enclosing two original counterparts of the summons and referencing the named defendants in the action, including the defaulting defendants. Ron Onorato, a manager member of both defaulting defendants, also acknowledged receipt of the letter.

Milder ultimately received service copies of the entries of service, summons, and complaint for four of the defendants named in the lawsuit. Milder and Onorato each averred that "[i]t is unclear what happened to service copies of the Entries of Service, Summons, and Complaint for [the defaulting defendants]." Both maintained that they "do not believe" they received service copies for the defaulting defendants.

The seven named defendants, including the defaulting defendants, hired legal counsel to represent them. At the initial meeting with the defendants' attorney, Milder delivered to the attorney what he believed to be all of the pleadings in his possession. The attorney then filed an answer on behalf of the defendants other than the defaulting defendants. According to the attorney, he had no knowledge that the defaulting defendants had been served with the lawsuit until Morris filed an affidavit of noncompliance. The attorney further averred, "[i]t is unclear what happened with respect to [the defaulting defendants]."

The defaulting defendants moved to open default on the grounds that it was a "proper case" for purposes of OCGA § 9-11-55 (b). Applying *BellSouth Telecommunications v. Future Communications*,

293 Ga. App. 247 (666 SE2d 699) (2008), the trial court required that the defaulting defendants provide a reasonable explanation for their failure to file a timely answer. The trial court found the defaulting defendants' explanation lacking, noting that they "merely state that '[i]t is unclear what happened' but do not dispute that they were properly served or that the cases fell into default."

(a) The defaulting defendants claim that the trial court improperly interpreted and applied *BellSouth* to require that they show a reasonable excuse or explanation for their failure to answer. We disagree.

> Under OCGA § 9-11-55 (b), a prejudgment default may be opened on one of three grounds *if* four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense.

(Footnote omitted; emphasis in original.) *Water Visions Intl. v. Tippett Clepper Assocs.*, 293 Ga. App. 285, 286 (2) (666 SE2d 628) (2008). "[T]he rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations." (Citation and punctuation omitted.) *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 144-145 (2) (661 SE2d 185) (2008).

Of the three grounds for opening default under OCGA § 9-11-55, a "proper case" is the broadest, "as if reaching out to take in every conceivable case where injustice might result if the default were not opened[.]" *Axelroad v. Preston*, 232 Ga. 836, 837 (1) (209 SE2d 178) (1974). Nevertheless, "the 'proper case' ground is . . . not so broad as to authorize the opening of a default for any reason whatsoever." (Punctuation omitted.) *In the Matter of Turk*, 267 Ga. 30, 31 (1) (471 SE2d 842) (1996). In *BellSouth*, supra, we concluded that a default may be opened "under the 'proper case' analysis only where a *reasonable* explanation for the failure to timely answer exists." (Citation and punctuation omitted; emphasis in original.) 293 Ga. App. at 250 (2). Given the unambiguous language of *BellSouth*, the trial court did not err in requiring the defaulting defendants to show a "reasonable explanation" for their failure to file an answer.

(b) The defaulting defendants further contend that the trial court failed to recognize that they presented a proper case for opening the default notwithstanding their inability to explain with certainty the failure to file a timely answer. Again, we disagree.

Although the affidavits of Milder, Onorato, and the defaulting

defendants' attorney provide a factual background, they do not provide an explanation why, after being properly served, the defaulting defendants failed to file an answer. Thus, the trial court, in its words, was "left to guess" whether the failure to file amounted to wilful disregard of process. The trial court did not err in concluding that the offered explanation, "[i]t is unclear what happened," was insufficient to allow it to open the default. See *Ga. Kidney &c. Specialists*, supra, 291 Ga. App. at 431 (2) (case did not fall within any of the three grounds for opening default where motion to open was not under oath and defendants cited "unknown reasons" for failure to file answer); *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 837-838 (1) (650 SE2d 307) (2007) (appellant "failed to show that this case fell within any of the three grounds for opening a default" where "no valid reason" was given for failing to file a timely answer); *Taurus Productions v. Maryland Sound Indus.*, 155 Ga. App. 147, 148 (2) (270 SE2d 337) (1980) (affirming trial court's refusal to open default, noting that the defendant "presented no excuse except inadvertence").

(c) The defaulting defendants further argue that they showed that Morris was not a real estate broker and so lacked standing to sue for a commission, and that, given the opportunity, they could show that the closing upon which Morris claimed a commission did not occur. Therefore, the defaulting defendants contend, they asserted a meritorious defense and satisfied the traditional requirement for opening the default as a "proper case." We disagree.

A defendant can demonstrate a meritorious defense "by showing that if relief from default is granted, the outcome of the suit may be different from the result if the default stands." (Citation and punctuation omitted.) *Boggs Rural Life Center v. IOS Capital*, 255 Ga. App. 847, 848 (567 SE2d 94) (2002). "Generally, default should be opened where the defendant acts with reasonable promptness and alleges a meritorious defense. [Cit.]" *Legacy Hills Residential Assn. v. Colonial Bank*, 255 Ga. App. 144, 146 (564 SE2d 550) (2002). A "meritorious defense," however, is one of the conditions to opening default and "proper case" is one of the three grounds for doing so. One does not define the other. See OCGA § 9-11-55 (b). "Having a defense to an action is not in itself a ground to opening default." (Citation and punctuation omitted.) *B-X Corp. v. Fulton Plumbing Co.*, 140 Ga. App. 131, 133 (230 SE2d 331) (1976). As discussed above, given the defaulting defendants' lack of a reasonable explanation for the untimely filing, the trial court did not err in finding that they failed to demonstrate a proper case for opening the default. See *Ga. Kidney &c. Specialists*, supra, 291 Ga. App. at 431 (2); *COMCAST Corp. v. Warren*, supra, 286 Ga. App. at 837-838 (1).

2. The defaulting defendants further argue that the trial court

erred in awarding a monetary judgment to Morris, notwithstanding the default, because Morris did not set forth a cause of action against the defaulting defendants and because the allegations of the complaint defeat his claims. We disagree.

In its order denying the defaulting defendants' motion to open default, the trial court concluded that Morris was entitled to the entry of a default judgment and directed that a hearing be scheduled on the issue of damages. After the hearing, the trial court entered its order and judgment finding that Morris's damages were liquidated damages and awarding him $213,000, based on Morris's allegation in the complaint that he was to receive a real estate commission in the amount of 2% of the $10,650,000 purchase price of the real property described in the complaint. See *Henry v. Adair Realty Co.*, 141 Ga. App. 182, 183 (1) (233 SE2d 39) (1977) (allegations of existence of contract to pay commission, performance, and amount paid by defendant for property was sufficient to ascertain damages by simple mathematical calculation).

As a rule,

> a judgment by default properly entered against parties sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law and facts not well pleaded and forced inferences are not admitted by a default judgment.

(Citation and punctuation omitted.) *COMCAST Corp.*, supra, 286 Ga. App. at 840 (2). Further,

> a defendant in default is in the position of having *admitted each and every material allegation* of the plaintiff's petition except as to the amount of ex delicto or unliquidated ex contractu damages alleged. *The default concludes the defendant's liability*, and estops him from offering any defenses which would defeat the right of recovery.

(Citation omitted; emphasis supplied.) Id.

The defaulting defendants point to paragraph 13 of the verified complaint, in which Morris avers that he "was employed as an independent contractor performing real estate marketing services for NorthPoint Sales and Marketing."[2] The defaulting defendants

---

[2] Assuming, but not deciding, that Morris would otherwise be required to prove that he

further rely on paragraphs 24, 33, and 34, in which Morris refers to Point Satellite's obligation to pay real estate commissions to North-Point Realty Partners and that "NorthPoint Realty Partners and Bob Alvarez, in turn, had a duty and obligation to pay . . . commissions . . . to Morris." The defaulting defendants argue that while the complaint may show a claim against NorthPoint Realty, Morris's complaint demonstrates that neither defaulting defendant had an obligation to pay him commissions. See *Grand v. Hope*, 274 Ga. App. 626, 629 (1) (617 SE2d 593) (2005) (default does not preclude a defendant from showing under the facts admitted that no claim existed).

The defaulting defendants overlook material allegations of the complaint. According to the complaint, Point Satellite entered into a Purchase Agreement with 3CK Development, LLC, and was obligated to pay NorthPoint Realty a commission equal to $5^{1}/2\%$ of the total purchase price of the property. The complaint asserts that Morris was a third-party beneficiary of that contract. More specifically, the complaint alleges that pursuant to the Purchase Agreement, a Memorandum of Record was executed by "NorthPoint Group and Bob Alvarez," who agreed that Morris was to receive "two percent (2%) of the total purchase price upon closing," while NorthPoint Realty would retain a $1^{1}/2\%$ commission and a third party, Eugene Chung, would receive the other 2% commission.[3] Thus, taking the allegations of the complaint as true, Point Satellite was contractually obligated to pay the commission, a portion of which was to be distributed to Morris in accordance with the Memorandum of Record executed pursuant to the Purchase Agreement. "NorthPoint Group," which is alleged in the complaint to include NorthPoint Group Holdings and to be an owner of both Point Satellite and NorthPoint Realty, further agreed that Morris would receive a 2% commission.[4] Accordingly, we find no error by the trial court in awarding liquidated damages against Point Satellite and NorthPoint Group Holdings, the defaulting defendants. See gener-

---

was a licensed broker to recover against the defaulting defendants on the merits, see OCGA § 43-40-24, in light of the Civil Practice Act "it is not necessary for the plaintiff to plead the existence of such a license in order to state a claim[.] [Cit.]" *Myers v. Wynn*, 201 Ga. App. 764, 765 (412 SE2d 581) (1991).

[3] Paragraph 25 of the complaint provides, in relevant part, that "pursuant to Paragraph 6 of the Purchase Agreement, NorthPoint Group and Bob Alvarez executed a Memorandum of Record . . . stating that the real estate commission in the amount of five and one-half percent $(5^{1}/2\%)$ of the total purchase price of the property was to be distributed as follows: . . . Morris was to receive two percent (2%) of the total purchase price upon closing. . . ."

[4] Paragraph 35 of the complaint alleges: "NorthPoint Group and Bob Alvarez agreed that two percent (2%) of the total purchase price . . . would be paid to Morris as his share of the real estate commissions." Paragraph 31 alleges that "the defendants" (which would include the defaulting defendants) are liable for his share of the real estate commission.

ally *Fadum v. Liakos*, 186 Ga. App. 556, 558 (3) (367 SE2d 843) (1988) (since from allegations of complaint, which must be taken as true, plaintiff pled liquidated damages, plaintiff was entitled to monetary damages awarded by the trial court without being required to establish them to a jury).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 15, 2009

*Weinstock & Scavo, Elizabeth A. Frey, Louis R. Cohan*, for appellants.

*Thompson, O'Brien, Kemp & Nasuti, Kevin S. Kovalchik*, for appellee.