## A09A1490. HERRING v. HARVEY et al.
### (685 SE2d 460)

PHIPPS, Judge.

Keisha Herring was involved in an altercation with Terrence Muhammed, who was providing security services at a promotional event involving professional entertainer Steve Harvey. She brought suit against Harvey and NUOPP, Inc., a corporation associated with Harvey, for Muhammed's allegedly tortious acts. Harvey and NUOPP filed an untimely answer. Herring appeals the court's grant of Harvey's and NUOPP's motion to open default and its grant of summary judgment to Harvey and NUOPP on her claims against them. For reasons set forth below, we affirm.

1. Herring served her complaint on Harvey and NUOPP on June 16, 2006. On June 19, 2006, out-of-state counsel for Harvey and NUOPP moved to appear before the trial court pro hac vice. The court granted this motion on August 16, 2006, and Harvey and NUOPP filed their answer to Herring's complaint the following day.

A case is automatically in default if an answer has not been filed within 30 days of service, unless the time for filing has been extended as provided by law.[1] But, under OCGA § 9-11-55 (b),

> [a]t any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.[2]

"In keeping with the policy of deciding cases on their merits, this provision should be liberally applied."[3] We review for abuse of discretion a court's decision to open a default under this provision.[4]

Local counsel for Harvey and NUOPP, who first entered the case in April 2008, submitted an affidavit in support of the motion to open default. In it, he attested to out-of-state counsel's effort to obtain pro

---

[1] OCGA §§ 9-11-12 (a); 9-11-55 (a).

[2] See generally *Bryant v. Haynie*, 216 Ga. App. 430, 431 (1) (454 SE2d 533) (1995) (describing four statutory prerequisites and three statutory grounds for opening default).

[3] *Exxon Corp. v. Thomason*, 269 Ga. 761, 762 (2) (504 SE2d 676) (1998) (footnotes omitted).

[4] See id. at 763 (2) (trial court has broad discretion in opening default).

hac vice admission in the case and the filing of the answer immediately after obtaining such admission. Local counsel further averred that, shortly after answering, Harvey filed discovery requests and the parties "continued litigation in a normal manner." Finally, local counsel averred that Harvey and NUOPP had meritorious defenses to Herring's claims (specifically referencing therein arguments made in their brief in support of the motion to open default), and he offered to plead instanter and to proceed to trial.

Counsel's affidavit met the four statutory conditions for opening a default: making a showing under oath;[5] offering to plead instanter; announcing readiness to proceed to trial; and setting up a meritorious defense, i.e., "showing that if relief from default is granted, the outcome of the suit may be different from the result if the default stands."[6] And although the circumstances here did not show a "providential cause" for the untimely answer,[7] as Harvey and NUOPP contend, the court nevertheless was authorized to open the default because the circumstances described in the affidavit presented a "proper case."

> [A]lthough the "proper case" ground is the broadest of the three set out in OCGA § 9-11-55 (b), it is not so broad as to authorize the opening of a default for any reason whatsoever. Its purpose is to permit the reaching out in every conceivable case where injustice might result if the default were not opened. Whatever that injustice might be, it may be avoided and the default opened under the "proper case" analysis only where a reasonable explanation for the failure to timely answer exists.[8]

Harvey and NUOPP provided a reasonable explanation for their failure to file a timely answer, the need for their out-of-state attorney to be granted permission to appear in the case. They acted promptly after being served with the complaint to have their counsel admitted pro hac vice, and they filed their answer immediately after that

---

[5] See *Rapid Taxi Co. v. Broughton*, 244 Ga. App. 427, 429 (2) (535 SE2d 780) (2000) (affidavit of paralegal attached to motion to open default met requirement to make showing "under oath").

[6] *Exxon Corp.*, supra at 761 (1) (footnote omitted); see *Rapid Taxi*, supra (affidavit attached to motion to open default, which effectively incorporated motion's allegation that defendant was not liable, because the driver was an independent contractor rather than an employee, satisfied statutory requirement of showing meritorious defense).

[7] See *Bryant*, supra at 432 (citing *Thomas v. State*, 118 Ga. App. 748, 750 (165 SE2d 477) (1968) (physical precedent), which defined providential cause as "includ[ing] such acts only as may be attributed to an act of God").

[8] *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 250 (2) (666 SE2d 699) (2008) (citations, punctuation and emphasis omitted).

admission was obtained.[9] There is no indication that the default delayed the litigation or resulted in prejudice to Herring. Under these circumstances, we cannot say the trial court abused its discretion in opening the default.[10]

2. In a separate claim of error, Herring contends that the trial court should have entered default judgment against Harvey and NUOPP. In light of our determination that the court was authorized to open the default,[11] we find no merit in this claim of error.

3. In her complaint, Herring alleged that Harvey and NUOPP were liable for Muhammed's tortious acts under the principle of respondeat superior, because Muhammed was either their employee or agent when the acts occurred. She contends that the trial court erred in granting summary judgment to Harvey and NUOPP on these claims.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[12]

The evidence showed that Herring was a friend of Harvey and had known him for several years. In June 2004, Herring was shopping at a mall department store. Harvey was participating in the promotional event at the mall and was on a podium between 70 and 100 feet away from Herring. Herring saw several people she identified as Harvey's "security and personnel." One of the people providing security was Muhammed, whom Herring had known through Harvey for two years.

Muhammed approached Herring from behind and called her by name. When she responded, he grabbed her arm tightly, yelled with obscenities at her and threatened her. Holding her by the arm and leaning his weight against her shoulder, Muhammed forced Herring to walk with him. Herring believed Muhammed had a gun, and she

---

[9] Compare *BellSouth*, supra ("proper case" was not demonstrated, and default should not have been opened, where defendant assumed its insurance carrier had received a copy of the complaint and was handling the lawsuit, but failed to take reasonable steps to ensure that this was so); *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 858 (5) (a) (459 SE2d 592) (1995) (noting, in affirming trial court's denial of a motion to open default, that defendant's out-of-state counsel did not apply for pro hac vice admission).

[10] See *Axelroad v. Preston*, 232 Ga. 836, 838 (2) (209 SE2d 178) (1974) (decided under predecessor to OCGA § 9-11-55 (b)).

[11] Division 1, supra.

[12] *Merlino v. City of Atlanta*, 283 Ga. 186-187 (657 SE2d 859) (2008) (citations omitted).

was afraid. She yanked her arm away and began to scream and move toward other people. Muhammed followed her. At this point, another security guard whom Herring knew through Harvey yelled for Muhammed to get away from Herring. Muhammed "quickly [went] the other direction." Subsequently, department store personnel intervened and Herring sought help from a police officer at the mall. In her complaint, Herring alleged that she experienced mental and physical pain and suffering as the result of Muhammed's acts.

(a) Summary judgment was appropriate as to the claim that NUOPP was liable for tortious acts committed by Muhammed. "[T]o impose liability under respondeat superior, some relationship must exist between the principal and agent or employer and employee."[13] But the record on appeal contains no evidence that NUOPP was Muhammed's employer or that Muhammed was NUOPP's agent. Muhammed testified that he worked for another entity (not a party to this action) and that he was providing security services "to Steve Harvey" at the time of the incident. Herring testified that she believed Muhammed worked for Harvey. Neither witness discussed NUOPP or its relationship, if any, with Muhammed.[14]

(b) Summary judgment likewise was appropriate as to the claims against Harvey.

(i) Herring contends that Harvey was liable for Muhammed's tortious acts as his employer. Under OCGA § 51-2-2, "[e]very person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily."[15] However,

> [t]he employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer. In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract.[16]

---

[13] *Gaskins v. Gaona*, 209 Ga. App. 322, 323 (2) (433 SE2d 408) (1993).

[14] In pleadings to the trial court, the parties also refer to the affidavit of Harvey, but the record on appeal does not contain this affidavit.

[15] See *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000).

[16] *Cotton States Mut. Ins. Co. v. Kinzalow*, 280 Ga. App. 397, 399-400 (634 SE2d 172) (2006) (citation omitted).

"There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."[17]

In his affidavit, Muhammed stated that he was employed by a company not involved in this action. He also averred that he was free to use his professional judgment in providing security services, defined as "patrol[ing] and observ[ing] the crowd," at the promotional event. This testimony indicated that Harvey did not retain a right to supervise the manner in which Muhammed provided the security services, which is an essential element of Herring's claim.[18] Thus, to survive summary judgment, Herring had the burden of identifying specific evidence to support her claim that Harvey controlled the manner and method of Muhammed's performance.[19] Herring's reliance upon the allegations in her complaint, in light of Harvey's default, did not satisfy this burden; because the default was properly opened, she could not rest on her pleadings to avoid summary judgment in the face of the evidence presented by Harvey.[20] And we have not found in our de novo review of the record any specific evidence that Harvey controlled the manner and method of Muhammed's performance. Herring's testimony that the various security people at the event were "his [Harvey's] security and personnel," and her affirmative response when asked whether she knew Muhammed to be "Harvey's bodyguard *or* some kind of security personnel"[21] did not address the nature and degree of control Harvey was able to exercise over Muhammed's work. Similarly, the fact that Muhammed moved away from Herring when yelled at by another security worker showed that, when confronted, Muhammed stopped accosting his victim, not that Harvey had the right to control the manner and method by which Muhammed performed his legitimate security functions.

---

[17] *Whatley v. Sharma*, 291 Ga. App. 228, 230 (661 SE2d 590) (2008) (citation omitted).

[18] See id. (homeowner did not retain control over manner and method of performance of tree-cutter, who was hired for clearly-defined job that he was free to perform as he saw best); *Larmon v. CCR Enterprises*, 285 Ga. App. 594-596 (647 SE2d 306) (2007) (business that delivered buses to customers was not liable for negligence of driver, who was hired to deliver bus to a specific address by a specific date but had discretion over the manner and method of making delivery).

[19] See *O'Connell v. Cora Bett Thomas Realty*, 254 Ga. App. 311 (563 SE2d 167) (2002) (on summary judgment, once defendant points to lack of evidence of essential element of plaintiff's claim, plaintiff must point to specific evidence of that element).

[20] See *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 591 (2) (569 SE2d 242) (2002) (noting, in case where court opened defendant's default, that if defendant was successful in piercing plaintiff's pleadings as to essential element, defendant was entitled to summary judgment), aff'd 276 Ga. 270 (578 SE2d 106) (2003); see also *O'Connell*, supra (once defendant has pointed to lack of evidence of essential element, plaintiff cannot rest on pleadings to avoid summary judgment).

[21] (Emphasis supplied.)

Cases upon which Herring relies are distinguishable. In *Kirk & Assoc. v. McClellan*,[22] there was evidence that a private detective business directed the manner in which a worker handled her cases, that the worker had no other job but worked for the business full time, that the worker submitted time sheets for her work, that the business could remove the worker from cases, and that the business announced to clients that the worker had joined its staff.[23] And in *Hall v. Buck*,[24] there was evidence that the owner of a trailer directed a truck driver where to take loads of timber, which days of the week to take the loads and when to leave with the loads, and allowed the truck to be kept at the trailer owner's shop when not in use.[25] Herring does not point to evidence of any similar details in this case, and we have found none.

(ii) Herring contends that the court erred in granting summary judgment to Harvey, because Harvey was liable under "other principles of agency." Herring fails to identify the principles upon which she relies and provides no argument or citation to authority supporting this claim of error, thereby abandoning any claim that summary judgment on this claim was improper.[26]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 21, 2009 ▮

▮

*Charles A. Mathis, Jr.,* for appellant.

*Hewitt & Rogers, Leron E. Rogers, Nelson, Mullins, Riley & Scarborough, Anita W. Thomas,* for appellees.

---

[22] 214 Ga. App. 685 (448 SE2d 764) (1994).

[23] Id. at 688 (2).

[24] 206 Ga. App. 754 (426 SE2d 586) (1992).

[25] Id. at 758 (6).

[26] See Court of Appeals Rule 25 (c) (2); *Roylston v. Bank of America*, 290 Ga. App. 556, n. 1 (660 SE2d 412) (2008).