A11A1020. STRADER v. PALLADIAN ENTERPRISES, LLC et al.
(719 SE2d 541)

DILLARD, Judge.

Rodman Strader filed a personal-injury action, seeking damages related to a slip-and-fall accident outside of his workplace, naming Palladian Enterprises, LLC ("Palladian") and three John Does as defendants. Palladian failed to file a timely answer to the complaint

and thereafter filed a motion to open default, which the trial court granted. We granted Strader's application for interlocutory appeal, challenging the trial court's order granting Palladian's motion to open default. For the reasons noted *infra*, we affirm the trial court's decision.

Palladian was served with Strader's complaint on April 26, 2010, but failed to file a timely answer within 30 days or to open the default as a matter of right within 15 days as permitted by OCGA § 9-11-55 (a). A non-jury trial was then set for August 30, 2010. On August 20, 2010, Palladian paid costs and filed a motion for continuance, in which it also gave notice of its intent to open the default. The trial court granted the continuance and, on August 30, 2010, Palladian filed a motion to open default. Along with its motion to open default, Palladian filed a verified answer setting forth meritorious defenses—namely that it did not own the subject building or property at issue and owed no duty to Strader—and announced that it was ready to proceed with trial. Palladian supplemented the motion to open default with the affidavit of its representative, Patricia Bittinger.[1]

Bittinger's affidavit explained that she received Strader's complaint on April 26, 2010, and forwarded it to Palladian's insurance carrier and local insurance agent on May 11, 2010. Bittinger was informed by the insurer that because Palladian had no ownership rights in either the subject building or the property at issue, it was not a proper party to the lawsuit;[2] she was also directed to place the proper entities on notice of the lawsuit.[3] Bittinger forwarded related

---

[1] Bittinger is the vice president of Palladian, Inc., an affiliated corporation.

[2] Strader objects to the affidavit on the ground that it contains communications between Bittinger and the insurer that amount to inadmissible hearsay. We disagree. Because the challenged statements are being used to explain Bittinger's conduct (as opposed to being admitted for the truth of the matter asserted), and are otherwise relevant to the reasonableness of Bittinger's actions, they do not constitute hearsay and were properly considered by the trial court. *See generally Lumpkin v. Deventer N. Am., Inc.*, 295 Ga. App. 312, 316 (2) (672 SE2d 405) (2008) (admitting out-of-court statements of a non-witness offered to explain conduct relevant to an issue presented); *Unified Gov't of Athens-Clarke County v. Watson*, 255 Ga. App. 1, 3 (2) (564 SE2d 453) (2002) ("When the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct." (punctuation omitted)). *Cf. Teague v. State*, 252 Ga. 534, 534 (1) (314 SE2d 910) (1984) ("[W]here the question is, whether the party acted prudently, wisely, or in good faith, the *information*[ ] on which he acted, whether true or false, is original and material evidence. . . . This doctrine applies to all other communications, wherever the fact that such communication was made, and not its truth or falsity, is the point in controversy." (punctuation omitted)).

[3] Bittinger's affidavit identifies Intrex Corporation Pension Plan as the owner of the subject building and further identifies Woodlawn Office Park Condominium Association, Inc. as the entity responsible for maintaining the subject property and the surrounding common areas. Palladian asserts that these corporate entities are related or affiliated, though distinct

documents to Palladian's insurer and local agent on June 11, 2010, and requested further instruction and direction. On June 20, 2010, Bittinger received and forwarded to Palladian's insurer a notice placing the case on an August 30, 2010 non-jury trial calendar, and Bittinger again requested further instruction and/or direction at that time. The notice made no mention of Palladian's default status. Bittinger contends that she first became aware that Palladian was in default on August 18, 2010, when she was advised that her insurer had appointed counsel to represent Palladian and that counsel would attempt to open the default. Two days later, Palladian's counsel paid costs and filed a motion for continuance, which also contained a notice of intent to file a motion to open the default. The insurer then filed a verified answer and moved to open the default on August 30, 2010.[4]

Upon considering the averments set forth in Palladian's motion to open default, as well as the supporting affidavit, the trial court found that a "proper case" had been established to open the default and granted the motion. In doing so, the trial court expressly held that (1) Palladian acted diligently by promptly forwarding the complaint and all subsequently received documents to its insurer; (2) Palladian was entitled to infer that its insurer received the forwarded documents and was handling the case based upon its instruction to Bittinger to place the proper entities on notice of the suit; (3) the delay between Palladian first learning of the default and moving to open same was not unreasonable; and (4) Strader failed to show that he would be prejudiced by the opening of the default. Strader filed the instant appeal, challenging the trial court's order granting Palladian's motion to open default.

At the outset, we note that OCGA § 9-11-55 (b) allows a default to be opened on one of three grounds: providential cause, excusable neglect, or a proper case.[5] As a condition precedent to the trial court's consideration of whether any of the three grounds has been met, the defendant must show compliance with four statutory conditions by (1) making a showing under oath, (2) setting up a meritorious defense, (3) offering to plead instanter, and (4) announcing ready to proceed with trial.[6] And here, it is undisputed that Palladian met these preconditions for opening default.

---

from Palladian.

[4] Strader was served with the verified answer and motion to open default on August 27, 2010.

[5] OCGA § 9-11-55 (b); *see also Anderson v. Flake*, 270 Ga. 141, 143 (2) (508 SE2d 650) (1998); *Boggs Rural Life Ctr. v. IOS Capital*, 255 Ga. App. 847, 847 (567 SE2d 94) (2002).

[6] OCGA § 9-11-55 (b); *see also Anderson*, 270 Ga. at 143 (2); *Boggs Rural Life Ctr.*, 255 Ga. App. at 847.

On appeal, Strader limits his challenge to the trial court's determination that Palladian's averments presented a "proper case" to allow the default to be opened, arguing that the court abused its discretion in opening the default because Palladian did not provide the court with a "reasonable explanation" for its failure to file a timely answer to his complaint. We disagree.

In considering Strader's argument, we begin by noting that the proper-case ground, under which the default was opened in this case, has been "construed to confer discretion on the trial court broader than that conferred on the other two grounds, as if reaching out to take in every conceivable case where injustice might result if the default were not opened."[7] Indeed, the sole function we have as an appellate court reviewing a trial court's grant of a motion to open default is to ascertain whether all of the conditions delineated in OCGA § 9-11-55 have been satisfied and, if so, "whether the trial court abused its discretion based on the facts peculiar to each case."[8] And because the public policy of this state strongly favors resolution of cases on their merits, the remedial provisions for opening a default are to be forgivingly applied.[9] For this reason, a default should generally be set aside when the defendant "acts with reasonable promptness and alleges a meritorious defense,"[10] so as to avoid a "drastic sanction" that "should be invoked only in extreme situations."[11] In sum, once the four preconditions have been satisfied by a defendant, the trial court is vested with broad discretion in determining whether to open a default on the "proper case" ground, and we will not disturb a trial court's decision on this matter absent an abuse of its discretion.[12]

In the case sub judice, Palladian received the complaint, forwarded same to its insurer, and confirmed that it was received.[13] It

---

[7] *Nelson v. Bd. of Regents of Univ. Sys. of Ga.*, 307 Ga. App. 220, 223 (1) (704 SE2d 868) (2010) (quoting *Legacy Hills Res. Ass'n v. Colonial Bank*, 255 Ga. App. 144, 145 (564 SE2d 550) (2002)).

[8] *Nelson*, 307 Ga. App. at 223 (1) (quoting *ABA 241 Peachtree, LLC v. Brooken & McGlothen, LLC*, 302 Ga. App. 208, 210 (1) (690 SE2d 514) (2010)).

[9] *See, e.g., Exxon Corp. v. Thomason*, 269 Ga. 761, 761-62 (1), (2) (504 SE2d 676) (1998); *Johnson v. Am. Nat'l Red Cross*, 253 Ga. App. 587, 589 (1) (569 SE2d 242) (2002); *Ford v. St. Francis Hosp.*, 227 Ga. App. 823, 826 (1) (490 SE2d 415) (1997).

[10] *Exxon Corp.*, 269 Ga. at 763 (2) (punctuation omitted).

[11] *Northpoint Group Holdings, LLC v. Morris*, 300 Ga. App. 491, 493 (1) (a) (685 SE2d 436) (2009) (punctuation omitted).

[12] *See, e.g., Henderson v. Quadramed Corp.*, 260 Ga. App. 680, 680-81(1) (580 SE2d 542) (2003); *Majestic Homes, Inc. v. Sierra Dev. Corp.*, 211 Ga. App. 223, 224 (1) (438 SE2d 686) (1993).

[13] Strader, relying on *BellSouth Telecommunications, Inc. v. Future Communications, Inc.*, 293 Ga. App. 247 (666 SE2d 699) (2008), argues that these facts did not amount to a showing by Palladian of "its own diligence and the insurer's assurances that it is handling the case." *See id.* at 249 (1) (punctuation omitted). But in making this argument, Strader is

also took the steps necessary to notify the proper parties in interest of the lawsuit. Additionally, Palladian forwarded the later-received documentation to its insurer and requested further instruction and/or direction. Moreover, within two days of learning of the default, Palladian paid costs, moved to continue the case, and filed notice of its intent to move to open the default, which it did twelve days later (along with filing a verified answer setting forth meritorious defenses and announcing that it was ready to proceed with trial).[14] Finally, Strader presented no evidence of prejudice suffered by the opening of the default.[15] Under the foregoing circumstances, particularly in light of the evidence that Palladian may not be a proper party in interest to the lawsuit, we conclude that the trial court did not abuse its broad discretion in accepting Palladian's explanation and opening the default.[16]

In reaching this conclusion, we once again emphasize that, contrary to plaintiff's assertion, "it is not for this Court to determine whether, *in the first instance*, the proffered justification given by [the defaulting defendant to the trial court] is reasonable," because to do so would "undermine[ ], to the point of eviscerating, the abuse of discretion standard of review we are charged with adhering to in

---

implicitly championing the "excusable neglect" standard, which is wholly irrelevant to this case. As explained in *Nelson*, we were precluded in *BellSouth* from identifying the reasonable basis for the trial court's decision to open the default in that case, which was done "without an explanation of the legal or factual basis for doing so." *Nelson*, 307 Ga. App. at 226 (1) (punctuation omitted). Nonetheless, any reading of the *BellSouth* decision "as holding that the 'proper case' ground for opening a default is subsumed into the 'excusable neglect' ground in each and every case where a defendant mistakenly assumes that a lawsuit is being handled by another person or entity" is misplaced and overly broad. *Nelson*, 307 Ga. App. at 226 (1).

[14] *See, e.g.*, *Shortnacy v. N. Atlanta Internal Med., P.C.*, 252 Ga. App. 321, 324 (1) (556 SE2d 209) (2001) (noting that "the potential for manifest injustice exists in this case if default judgment is entered against the defaulting defendants because they have pled what appears to be a meritorious defense"); *see also Vito v. Dhillon*, 269 Ga. App. 899, 904 (2) (605 SE2d 602) (2004) (noting that opening default was appropriate when defendant met the requirements of OCGA § 9-11-55 (b), which includes alleging a meritorious defense); *Whitley v. Bank S., N.A.*, 185 Ga. App. 896, 898 (2) (366 SE2d 182) (1988) (noting that opening default is appropriate when defendant "acts with reasonable promptness and alleges a meritorious defense" (punctuation omitted)).

[15] *See, e.g.*, *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 145 (2) (661 SE2d 185) (2008) (noting that "this Court has recognized a number of factors for determining whether opening default would be appropriate in a particular case, including[,]" but not limited to,

whether and how the opposing party will be prejudiced by opening the default; whether the opposing party elected not to raise the default issue until after the time under OCGA § 9-11-55 (a) had expired for the defaulting party to open default as a matter of right; and whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed[,]

and "any additional delay occasioned by a failure to file promptly for opening default upon its discovery can be considered in determining whether defendants' neglect was excusable" (punctuation omitted)); *Ford*, 227 Ga. App. at 826 (1) (same).

[16] *See, e.g.*, *Exxon Corp.*, 269 Ga. at 763 (2); *Henderson*, 260 Ga. App. at 682 (2); *Johnson*, 253 Ga. App. at 590-91,(1); *Shortnacy*, 252 Ga. App. at 323-24 (1).

these cases . . . ."[17] Thus, while it is certainly true that a "default [may be] opened under the 'proper case' analysis only where a reasonable explanation for the failure to timely answer exists,"[18] this Court's review of a trial court's determination as to the reasonableness of such an explanation is exceedingly deferential. As we have previously explained, "this Court can (and should) only evaluate the reasonableness of [Palladian's] proffered justification for opening a default on the 'proper case' ground in the context of considering whether the trial court's acceptance of this justification as a basis for opening default amounts to a manifest abuse of discretion."[19] To do otherwise would amount to substituting our judgment for that of the trial court, which the applicable standard of review flatly prohibits.[20]

*Judgment affirmed. Mikell, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 16, 2011.

*Bell & Mulholland, Robert E. Mulholland, James D. Summerville*, for appellant.

*Goodman, McGuffey, Lindsey & Johnson, David M. Abercrombie*, for appellees.

---

[17] *Nelson*, 307 Ga. App. at 224 (emphasis supplied).

[18] *BellSouth Telecomms., Inc.*, 293 Ga. App. at 250 (2).

[19] *Nelson*, 307 Ga. App. at 224-25 (1).

[20] In his brief, Strader criticizes our decision in *Nelson*, characterizing the "hands off approach" taken in that opinion as being inconsistent with other decisions of this Court, the vast majority of which resulted in this Court *affirming* the trial court's exercise of its discretion to grant or deny a motion to open default. *See Sierra-Corral Homes, LLC v. Pourreza*, 308 Ga. App. 543, 543-45 (1) (708 SE2d 17) (2011); *NorthPoint Group Holdings, LLC*, 300 Ga. App. at 493 (1) (a); *Herring v. Harvey*, 300 Ga. App. 560, 560-62 (1) (685 SE2d 460) (2009); *Henderson*, 260 Ga. App. at 680-81 (1); *Tauber v. Cmty. Ctrs. Two, LLC*, 235 Ga. App. 705, 706 (3) (509 SE2d 662) (1998); *First Union Nat'l Bank of Ga. v. Floyd*, 198 Ga. App. 99, 100-01 (2) (400 SE2d 393) (1990) (physical precedent only). Suffice it to say, Strader's reliance on these decisions is badly misplaced. Likewise inapt is Strader's reliance on *BellSouth Telecomms., Inc.*, 293 Ga. App. at 247, for the reasons noted *supra* at note 13, and on *Sidwell v. Sidwell*, 237 Ga. App. 716 (515 SE2d 634) (1999), which is easily distinguishable. *Id.* at 718 (where the *only* reason given by the defendants for opening the default on proper-case grounds was the "self-serving rationalization" that they were worried about the lawsuit upsetting an elderly gentleman). Additionally, the decisions cited by Strader from our Supreme Court as "being in accord" with the foregoing opinions from this Court do nothing more than set forth the uncontroversial proposition that whether or not a proper case for opening a default has or has not been made by a defendant is a fact-intensive inquiry, and in no way undermines or diminishes the abuse-of-discretion standard of review imposed on Georgia appellate courts in such cases. *See Schrembs v. Atlanta Classic Cars*, 261 Ga. 182, 183 n.5 (402 SE2d 723) (1991); *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400, 402 (314 SE2d 199) (1984); *Copeland v. Carter*, 247 Ga. 542, 543 (1) (277 SE2d 500) (1981); *Axelroad v. Preston*, 232 Ga. 836, 837 (1), (2) (209 SE2d 178) (1974). Finally, Strader's reliance on *In the Matter of Turk*, 267 Ga. 30, 31 (1) (471 SE2d 842) (1996), is misplaced for the same reason we previously noted in *Nelson*, 307 Ga. App. at 223 (1) n.5.