**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 14, 2017**

# In the Court of Appeals of Georgia

A17A1686. SAMADI v. FEDERAL HOME LOAN MORTGAGE CORPORATION.

BARNES, Presiding Judge.

Proceeding pro se, Mike Samadi appeals the trial court's order granting the motion to open default filed by the Federal Home Loan Mortgage Corporation ("Freddie Mac") and the trial court's final order and judgment granting Freddie Mac's motion to dismiss based on the doctrines of res judicata and collateral estoppel. For the reasons discussed more fully below, we conclude that the trial court abused its discretion in determining that the present lawsuit was a "proper case" for opening default under OCGA § 9-11-55 (b) based solely on the fact that Freddie Mac ultimately raised meritorious defenses to Samadi's lawsuit; the trial court also was required to consider whether Freddie Mac had a reasonable explanation for its approximately 15-month delay in responding to Samadi's complaint. Accordingly, we vacate the trial court order opening the default and its final order and judgment dismissing Samadi's claims, and

we remand for the trial court to apply the proper legal standard for determining whether the default should be opened.

*Factual Background.* The record reflects that in June 2002, Samadi obtained a $281,000 loan from Mortgage Portfolio Services to purchase certain real property located in Columbia County, Georgia (the "Property"). Samadi executed a promissory note in connection with the loan that was secured with a deed to secure debt on the Property. The note and security deed were assigned to SunTrust Mortgage, Inc. ("SunTrust").

Samadi later defaulted on the note, and in November 2012, SunTrust foreclosed on the Property pursuant to the security deed. SunTrust was the highest bidder at the foreclosure sale and then conveyed the Property to Freddie Mac. In March 2013, Freddie Mac initiated dispossessory proceedings against Samadi in the Magistrate Court of Columbia County (the "Dispossessory Proceeding"). Later in March, the magistrate court granted a writ of possession to Freddie Mac in the Dispossessory Proceeding, and Freddie Mac proceeded with the eviction and with the removal of Samadi's personal belongings from the Property.

*The First Action.* Since his default on the Note, Samadi has filed three separate lawsuits that have resulted in a complex procedural history. In January 2009, Samadi

2

filed suit in the Superior Court of Columbia County against SunTrust for alleged deceptive trade practices relating to his mortgage loan (the "First Action"). The trial court entered summary judgment in favor of Suntrust on all of Samadi's claims, this Court affirmed without opinion,[1] and the Supreme Court of Georgia denied Samadi's petition for a writ of certiorari.

*The Second Action.* In November 2012, Samadi filed a second suit in the Superior Court of Columbia County against SunTrust, alleging that the foreclosure proceedings on the Property were illegal and seeking a temporary restraining order ("TRO") and injunctive relief (the "Second Action"). Samadi later amended his complaint to add Freddie Mac as a defendant and to add a quiet title claim, but Samadi did not specifically assert any claims pertaining to the Dispossessory Proceeding or his eviction from the Property. The trial court initially granted a TRO and preliminary injunction prohibiting the foreclosure of the Property, but the trial court later dissolved the TRO and injunction nunc pro tunc and dismissed Samadi's claims against SunTrust and Freddie Mac with prejudice. Samadi sought appellate review from this Court, but the trial court dismissed his appeal for an unreasonable delay in filing the transcript, and

---

[1] See *Samadi v. SunTrust Mtg.*, 316 Ga. App. XXV (July 10, 2012).

3

this Court affirmed the dismissal without opinion.[2] Samadi filed a petition for writ of certiorari, which the Georgia Supreme Court denied.

*The Current Action.* In April 2015, while the appeal of the Second Action remained pending, Samadi filed the current pro se action against Freddie Mac in the State Court of Cobb County, arguing that the Dispossessory Proceeding and removal of his personal belongings from the Property had been conducted in an illegal manner (the "Current Action"). The complaint alleged that Freddie Mac had never properly served Samadi with notice of the Dispossessory Proceeding, such that he had been unaware of the eviction and removal of his personal belongings when they occurred during the pendency of the Second Action. The complaint further alleged that Freddie Mac's eviction of Samadi and removal of his personal belongings had been illegal because they occurred while the TRO and preliminary injunction were still in force in the Second Action.

In May 2015, Freddie Mac was served through its registered agent with the summons and complaint in the Current Action. Because Freddie Mac did not timely file

---

[2] See *Samadi v. SunTrust Mtg.*, 332 Ga. App. XXIV (March 29, 2015).

an answer to the complaint,[3] the Current Action went into automatic default. See OCGA § 9-11-55 (a).[4] Nor did Freddie Mac open the default as a matter of right within 15 days of the automatic default. See id.

---

[3] See OCGA § 9-11-12 (a) ("A defendant shall serve his answer within 30 days after the service of the summons and complaint upon him, unless otherwise provided by statute. . . .").

[4] OCGA § 9-11-55 (a) provides:

If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.

See *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 248 (666 SE2d 699) (2008) (case is automatically in default, where no answer was filed within the statutory period and the time for responding was not extended).

In September 2015, Samadi filed a motion for entry of default judgment against Freddie Mac pursuant to OCGA § 9-11-55 (a). Freddie Mac did not respond to the motion, but in November 2015, the lawsuit was transferred to the Superior Court of Cobb County before the state court ruled on the motion because Samadi sought equitable relief in his complaint.[5] Following the transfer of the case, the superior court issued a rule nisi in April 2016 ordering the parties to attend a hearing in May 2016 to address Samadi's motion for entry of default judgment.

Upon receiving the rule nisi in May 2016, Freddie Mac realized that it had not responded to the lawsuit and retained counsel, but it did not initially respond to Samadi's motion for entry of default judgment or apparently attend the hearing. Rather, in June 2016, Freddie Mac filed a motion to dismiss Samadi's complaint on the grounds of res judicata, collateral estoppel, and failure to state a claim upon which relief could

---

[5] See *Thor Gallery at S. DeKalb v. Monger*, 338 Ga. App. 235, 236 (1) (789 SE2d 806) (2016) ("Georgia's state courts, created pursuant to OCGA § 15-7-2, exercise comprehensive jurisdiction over a wide range of claims, including, inter alia, landlord/tenant disputes, misdemeanor offenses (including driving under the influence), contract and tort cases, and cases involving real property and small claims, but excluding only felony criminal cases, certain domestic cases, *equity matters*, and land title cases. See OCGA §§ 15-7-4, 15-6-8.") (citation and punctuation omitted; emphasis in original).

be granted. Subsequently, in August 2016, Freddie Mac filed a motion to open the default pursuant to OCGA § 9-11-55 (b),[6] along with a verified answer, notice of payment of court costs, and a supporting affidavit. In the sworn affidavit, a Freddie Mac employee who monitors and manages litigation on the company's foreclosed properties averred that Freddie Mac had been served with Samadi's complaint in the Current Action in May 2015. The employee further averred that Freddie Mac had failed to answer the complaint in the Current Action filed in Cobb County because it had "inadvertently assumed" that Samadi's pro se complaint had been filed as part of the Second Action in Columbia County, which had already been dismissed with prejudice. Freddie Mac's verified answer raised several defenses, including res judicata and collateral estoppel based on the Second Action, the appeals of which had been concluded by that point.

---

[6] OCGA § 9-11-55 (b) provides:
At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

In December 2016, the trial court entered an order granting Freddie Mac's motion to open the default in the Current Action. The trial court concluded that the statutory prerequisites for opening default under OCGA § 9-11-55 (b) had been satisfied and that the Current Action was a "proper case" for opening default to avoid a manifest injustice, given Samadi's meritorious defenses of res judicata and collateral estoppel. The trial court thereafter entered a final order and judgment granting Freddie Mac's motion to dismiss all of Samadi's claims on res judicata and collateral estoppel grounds. Samadi now appeals these rulings by the trial court.

1. Samadi contends that trial court erred in granting Freddie Mac's motion to open the default.

> A trial court's decision to open a prejudgment default under OCGA § 9-11-55 (b) is reviewed for an abuse of discretion as long as certain prerequisites are met. After the 15-day grace period for opening default as a matter of right under OCGA § 9-11-55 (a), a trial court has no discretion to open default unless the defendant's showing for opening the default meets four conditions: it must (1) be made under oath, (2) offer to plead instanter, (3) announce ready to proceed with trial, and (4) set up a meritorious defense. Compliance with the conditions of OCGA § 9-11-55 (b) is mandatory, and in its absence, the trial court has no discretion to open default. . . . Once those four prerequisites are satisfied, a trial court may [exercise its discretion and ] open default on any one of three

8

grounds: (1) providential cause, (2) excusable neglect, or (3) that a proper case has been made for opening default.

(Citations and punctuation omitted.) *Franklin v. Eaves*, 337 Ga. App. 292, 293-294 (1) (787 SE2d 265) (2016). See *Cavender v. Taylor*, 285 Ga. 724, 724-725 (2) (681 SE2d 139) (2009); *Constructamax v. Andy Bland Constr.*, 280 Ga. App. 403, 404 (1) (634 SE2d 168) (2006). "Although the rule permitting opening of default is remedial in nature and should be liberally applied, and whenever possible cases should be decided on their merits as default judgment is not favored in law, this rule is not absolute. A defendant must still satisfy the requirements of OCGA § 9-11-55 (b)." (Citations and punctuation omitted.) *Comcast Corp. v. Warren*, 286 Ga. App. 835, 836-837 (1) (650 SE2d 307) (2007).

(a) The trial court did not err in finding that Freddie Mac met the four statutory prerequisites for opening default in OCGA § 9-11-55 (b). As previously noted, Freddie Mac presented the sworn affidavit of a representative to explain its delay in timely answering Samadi's complaint in the Current Action. In addition, Freddie Mac offered to plead instanter in its motion to open default and attached a verified answer to its motion, and Freddie Mac also announced that it was ready to proceed with trial. Given this record, the trial court was authorized to find that the first three prerequisites for

opening default had been met. See OCGA § 9-11-55 (b); *Mayfield v. Heiman*, 317 Ga. App. 322, 331-332 (6) (730 SE2d 685) (2012); *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 590 (1) (569 SE2d 242) (2002).

The trial court also was entitled to find that Freddie Mac met the fourth and final prerequisite for opening default by setting up meritorious defenses in its verified answer. This prerequisite "does not require a defendant to show that it will completely defeat plaintiff's claim; rather, the defendant must demonstrate that if relief from default is granted, the outcome of the suit may be different from the result if the default stands." (Citation and punctuation omitted.) *Johnson*, 253 Ga. App. at 590 (1). See *Exxon Corp. v. Thomason*, 269 Ga. 761, 761 (1) (504 SE2d 676) (1998). Applying this test, the trial court was authorized to conclude that Freddie Mac had raised meritorious defenses in its answer, namely, the defenses of res judicata and collateral estoppel predicated on the prior litigation between the parties in the Second Action. See id.; *Legacy Hills Residential Assn. v. Colonial Bank*, 255 Ga. App. 144, 145-146 (564 SE2d 550) (2002).[7]

---

[7] See OCGA § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."); *Neely v. City of Riverdale*, 298 Ga. App. 884, 886-887 (2) (681 SE2d 677) (2009) ("The doctrine of res judicata prevents re-litigation of matters that were or could have been litigated in a previously-adjudicated action. The doctrine applies even if some new factual allegations

10

For these combined reasons, the trial court did not err in concluding that Freddie Mac met the four statutory prerequisites for opening default under OCGA § 9-11-55 (b). The trial court therefore was authorized to exercise its discretion and determine whether one of the three grounds for opening default (providential cause, excusable neglect, or proper case) existed. *Franklin*, 337 Ga. App. at 294 (1).

(b) *The "Proper Case" Ground.* The trial court specified in its order that it was opening the default on the "proper case" ground. Samadi argues that the trial court abused its discretion in concluding that the Current Action was a "proper case" for opening default, given the approximately 15-month delay between when Freddie Mac was served with the complaint and when it moved to open the default. We conclude that

---

have been made, some new relief has been requested, or a new defendant has been added. It is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.") (citations, punctuation, and emphasis omitted); *Thomas County Bd. of Tax Assessors v. Thomasville*, 277 Ga. App. 591, 593 (2) (627 SE2d 192) (2006) ("In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.") (citation and punctuation omitted).

11

the trial court abused its discretion under the circumstances here, where the court determined that the Current Act was a "proper case" for opening the default solely on the ground that Freddie Mac had asserted the meritorious defenses of res judicata and collateral estoppel.

"While the 'proper case' ground is broader than the others, it does not give a trial court the authority to open a default for any reason whatsoever." *Cardinal Robotics v. Moody*, 287 Ga. 18, 21 (694 SE2d 346) (2010). See *Franklin*, 337 Ga. App. at 294 (1) (noting that the "proper case" ground "does not give a trial court unlimited authority to open a default"). And, the fact that a defendant has a meritorious defense to an action "is not in itself a ground [for] opening default." (Citation and punctuation omitted.) *NorthPoint Group Holdings v. Morris*, 300 Ga. App. 491, 494 (1) (c) (685 SE2d 436) (2009). See *Buchanan v. Treadwell*, 213 Ga. 155, 156 (3) (97 SE2d 705) (1957); *B-X Corp. v. Fulton Plumbing Co.*, 140 Ga. App. 131, 132-133 (2) (230 SE2d 331) (1976); *West Court Square v. Assayag*, 131 Ga. App. 690, 691 (2) (206 SE2d 579) (1974). Rather, "the defendant must have not only a meritorious defense but also a legal excuse for its non-appearance." (Citation and punctuation omitted.) *Constructamax*, 280 Ga. App. at 404 (1). See *Buchanan*, 213 Ga. at 156 (3). Hence, "a default may be opened under the 'proper case' analysis only where a *reasonable* explanation for the failure to

12

timely answer exists." (Emphasis in original.) *NorthPoint Group Holdings*, 300 Ga.

App. at 493 (1) (a), quoting *Bellsouth Telecommunications*, 293 Ga. App. at 250 (2).[8]

See *Legacy Hills Residential Assn. v. Colonial Bank*, 255 Ga. App. 144, 146 (564 SE2d

---

[8] The *Bellsouth* decision should not be construed in an overly broad manner to hold "that the 'proper case' ground for opening a default is subsumed into the 'excusable neglect' ground." *Nelson v. Bd. of Regents of Univ. System of Ga.*, 307 Ga. App. 220, 226 (1) (704 SE2d 868) (2010). See *Strader v. Palladian Enterprises*, 312 Ga. App. 646, 649-650, n. 13 (719 SE2d 541) (2011). Nevertheless, a defendant relying upon the "proper case" ground still must provide some explanation for the delay in answering the complaint, with the trial court having broad discretion to determine whether the explanation was reasonable. See *Strader*, 312 Ga. App. at 649-650 (trial court acted within its discretion in accepting defendant's explanation for delay and opening default on "proper case" ground, where defendant had forwarded the complaint to its insurance carrier and local insurance agent, confirmed that the complaint had been received by them, notified the proper parties who had an interest in the lawsuit, relied upon its insurer for "further instruction and/or direction," and began taking steps to open default within two days of learning of the default); *Nelson*, 307 Ga. App. at 222 (1), 224 (1) (trial court acted within its discretion in opening default on "proper case" ground in malpractice action brought against defendant healthcare company, where defendant "was still transitioning into its operation of the hospital and had not yet implemented a new procedure for handling lawsuits," the defendant's employees had "mistakenly assumed" that an administrative agency would be handling the lawsuit for the hospital, the lawsuit at issue was the first malpractice suit filed against the defendant since it had taken control of the hospital's operations, and the defendant had "acted promptly by filing a motion to open the default less than a week after the expiration of the time it could have done so as a matter of right [under OCGA § 9-11-55 (a)] (and one day after learning of the default)"). Compare *Sidwell v. Sidwell*, 237 Ga. App. 716, 718 (1) (515 SE2d 634) (1999) (default could not be opened on "proper case" ground, where the defendants "testified that they did not answer the lawsuit because they did not want to upset the elder [father], [and] they still did not bother to file a response until 25 days after he died"; defendants' explanation was nothing more than a "self-serving rationalization" that provided no basis for opening default).

13

550) (2002) ("Generally, default should be opened where the defendant *acts with reasonable promptness* and alleges a meritorious defense.") (emphasis supplied). "Requiring a reasonable excuse or explanation for opening the default on this ground is necessary, otherwise the trial court would not be acting within its discretion as required by OCGA § 9-11-55 (b). As we have explained, judicial discretion is that discretion bound with the rule of *reason* and law." (Citation and punctuation omitted; emphasis in original.) *BellSouth Telecommunications*, 293 Ga. App. at 250 (2).

Based on this precedent, the trial court abused its discretion by opening the default on the "proper case" ground predicated solely on the fact that Freddie Mac asserted meritorious defenses; the trial court also was required to determine as part of its analysis whether Freddie Mac had a reasonable explanation for its failure to timely answer Samadi's complaint. See *Migmar, Inc. v. Williams*, 281 Ga. App. 870, 873 (4) (637 SE2d 471) (2006) (fact that defendant had meritorious defense of judicial estoppel was not in itself a basis for opening default). See generally *Hungry Wolf / Sugar & Spice v. Langdeau*, 338 Ga. App. 750, 753 (791 SE2d 850) (2016) (trial court abuses its discretion where its application of the legal standard is incomplete). "[I]t is not for this Court to determine whether, in the first instance, the proffered justification given by the defaulting defendant is reasonable." (Citation, punctuation, and emphasis

14

omitted.) *Strader*, 312 Ga. App. at 650. Accordingly, we vacate the trial court's order opening the default and remand for the trial court to determine in the first instance whether a reasonable explanation for Freddie Mac's failure to timely file an answer exists. See *Patel v. Gupta*, 234 Ga. App. 441, 443 (1) (507 SE2d 763) (1998) (vacating order opening default based on trial court's misapplication of legal standard).

2. For the reasons discussed supra in Division 1, we vacate the trial court's final order and judgment dismissing Samadi's claims because the trial court must first address under the appropriate legal standard whether the default should be opened under the "proper case" ground or whether default judgment should be entered in favor of Samadi. See generally *Azarat Mktg. Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 256-257 (1) (a) (537 SE2d 99) (2000) (if default judgment is entered for failure to timely file an answer, the affirmative defense of res judicata is waived).

3. We need not address Samadi's remaining arguments for reversal in light of our decision supra in Divisions 1 and 2.

*Judgment vacated, and case remanded with direction. McMillian and Mercier, JJ., concur.*

15