**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1535. HERNANDEZ et al. v. SCHUMACHER GROUP
    HEALTHCARE CONSULTING, INC.

A19A1650. GLENN v. HERNANDEZ et al.

REESE, Judge.

These consolidated appeals arise from a medical malpractice and wrongful death action brought by Hettie Sue Hernandez, the widow and administrator of the estate of Domingo Hernandez (the "decedent"). Hernandez sued two physicians, Dr. John Glenn and Dr. James Sexton, the physicians' alleged employers, and the hospital where the physicians treated the decedent, Ben Hill County Hospital Authority d/b/a Dorminy Medical Center.

In Case No. A19A1535, Hernandez appeals from the grant of summary judgment to Schumacher Group Healthcare Consulting, Inc. a/k/a Schumacher Clinical Partners ("Schumacher"). Hernandez contends that the trial court erred in

finding, as a matter of law, that Dr. Glenn was not Schumacher's employee, independent contractor, or agent at the time of his treatment of the decedent and, as a result, Schumacher could not be held vicariously liable for Dr. Glenn's negligence. Hernandez argues that a jury issue exists as to whether Dr. Glenn was an employee or independent contractor of Schumacher. Hernandez also contends that the trial court abused its discretion in denying her request for an extension of time for her to respond to Schumacher's summary judgment motion, arguing that the court denied her the opportunity to conduct discovery as to Dr. Glenn's employment relationship with Schumacher.

In Case No. A19A1650, Dr. Glenn appeals from the trial court's denial of his motion to set aside a default judgment entered against him or, in the alternative, to open the default.[1]

For the reasons set forth infra, we affirm the grant of summary judgment to Schumacher in Case No. A19A1535, and we dismiss the appeal in Case No. A19A1650.

---

[1] This Court granted Dr. Glenn's application for interlocutory review.

Viewed in the light most favorable to Hernandez, as the non-moving party on summary judgment,[2] the record shows the following facts. According to Hernandez's complaint, on April 18, 2015, the decedent went to the emergency room of Dorminy Medical Center ("DMC") because he was suffering from chest pain. Dr. Glenn examined the decedent and ordered tests before admitting the decedent to DMC. The decedent's condition worsened, and, because DMC lacked the ability to treat his condition, DMC arranged to transport the decedent to a better equipped hospital. During the transport, however, the decedent went into cardiac arrest and was pronounced dead upon arrival.

Hernandez filed a complaint for medical malpractice and wrongful death against Dr. Glenn, Schumacher, and the other defendants. Hernandez alleged that Dr. Glenn was Schumacher's employee and, thus, Schumacher was vicariously liable for Dr. Glenn's professional negligence.[3]

---

[2] See *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

[3] Hernandez originally filed her complaint in Dodge County, but voluntarily dismissed the complaint and re-filed it in Fulton County, although the Fulton County court granted the defendants' motion to transfer venue to Ben Hill County, where DMC is located. Thus, any references in the record to "complaints" refer to the same complaint, first filed by Hernandez in Dodge County, then dismissed and re-filed in Fulton County.

In its answer, Schumacher specifically denied that Dr. Glenn had ever been its employee or agent. Similarly, in its responses to Hernandez's first interrogatories, Schumacher repeatedly denied that Dr. Glenn had been its employee or agent, and stated, instead, that Dr. Glenn was an independent contractor of Ben Hill Emergency Group, LLC.

Dr. Glenn failed to answer Hernandez's complaint, and the trial court granted Hernandez's motion for a default judgment against him on February 1, 2018. Six weeks later, Dr. Glenn filed a motion to set aside the default judgment or, in the alternative, to open default ("default motion"). In the default motion, Dr. Glenn claimed that, when he received Hernandez's complaint, he "immediately reported the claim to his employer, . . . Schumacher[.]" He asserted that he had had a "series of communication[s] with his employer," who had provided counsel for him and "assur[ed]" him that the suit was being handled. Therefore, Dr. Glenn claimed that he "reasonably believed that [Schumacher] was managing the lawsuit on his behalf." According to the default motion, Dr. Glenn did not realize that Schumacher or the law firm purportedly representing him had not responded to the suit on his behalf until he received notice of the default judgment. Attached to Dr. Glenn's default motion was

4

his verified answer to the complaint, in which Dr. Glenn admitted to the complaint's allegation that he "was working on behalf of Schumacher at all times relevant hereto."

Before the trial court ruled on Dr. Glenn's default motion, Schumacher filed a motion for summary judgment, in which it asserted:

> Dr. Glenn has never been an employee or agent of Schumacher. In fact, Schumacher is a holding company and has never had any employees or agents. Rather, Dr. Glenn was an independent contractor of Ben Hill Emergency Group, LLC ("Ben Hill"), which was the physician group organized for the purpose of entering into a contract to provide emergency department staffing and management services to [DMC]. Both Schumacher and Ben Hill are owned by a separate holding company, Schumacher Medical Corporation.[4] Therefore, Schumacher had no legal relationship whatsoever with Ben Hill, [DMC], or Dr. Glenn.
>
> At the time of the medical care at issue in this case, there was a contract between Dr. Glenn and Ben Hill, pursuant to which Dr. Glenn would provide emergency physician staffing services to Ben Hill at the emergency department of [DMC]. In turn, Ben Hill had a contract with [DMC], pursuant to which Ben Hill would contract with individual physicians (i.e., Dr. Glenn) to provide emergency medicine physician staffing to DMC.
>
> . . .

---

[4] Hernandez did not name either Schumacher Medical Corporation or Ben Hill as a defendant in the complaint at issue, and neither entity is a party to this appeal.

Because Dr. Glenn is an independent contractor with Ben Hill, and because Schumacher had no legal relationship with Dr. Glenn or Ben Hill, it is not possible to impose vicarious liability on Schumacher for any alleged negligence of Dr. Glenn.

Attached to Schumacher's summary judgment motion was the affidavit of Lisha Falk, the Assistant Corporate Secretary of Schumacher, as well as the Assistant Corporate Secretary of Schumacher Medical Corporation. Falk's affidavit verified the assertions in Schumacher's motion. In addition, two contracts were attached to Schumacher's summary judgment motion. One of the contracts was between Ben Hill and DMC, and it provided that Ben Hill agreed to supply DMC with "independent contractor physicians" to provide emergency and general medical care to the hospital's patients. The other contract was a "Physician Agreement[,]" dated April 29, 2008, between *Dr. Glenn and Ben Hill*, wherein Dr. Glenn agreed to work in the DMC's emergency department pursuant to the contract between Ben Hill and the DMC. Under the section entitled "Nature of Relationship[,]" the agreement stated as follows:

> It is agreed and understood by and between the parties hereto that [Dr. Glenn] is associated with [Ben Hill] only for the purposes and to the extent set forth herein, and his/her relation to [Ben Hill] shall be that of an independent contractor. [Ben Hill] shall not exercise any control or direction over the methods by which [Dr. Glenn] shall perform his/her

professional work and duties while on duty. This Agreement shall not be construed as an agreement of employment, a partnership or any other form of business entity.

In addition, Ben Hill agreed to procure professional malpractice insurance for Dr. Glenn to cover "medical services performed by [Dr. Glenn] pursuant to this Agreement." The agreement also specifically required Dr. Glenn to notify "Ben Hill Emergency Group, LLC" in writing of any professional liability claims against him. Significantly, there is nothing in the Physician Agreement to support a finding that Schumacher was a party to the agreement, that Dr. Glenn was an employee or independent contractor of Schumacher, or that some legal relationship existed between Schumacher and Dr. Glenn that would expose Schumacher to vicarious liability for Dr. Glenn's negligence.

About two weeks after Schumacher moved for summary judgment, Dr. Glenn filed a response to Hernandez's opposition to his default motion; in his response, Dr. Glenn simply repeated some of the arguments he had asserted in his default motion. Significantly, however, Dr. Glenn omitted his earlier assertions that Schumacher was his employer, that he had sent Hernandez's complaint to Schumacher, that he had corresponded with Schumacher about the litigation, and that Schumacher had

7

"assur[ed]" him that it was handling the complaint on his behalf. In addition, Dr. Glenn did not contest the validity of the Physician Agreement between him and Ben Hill in his response. Dr. Glenn attached a second affidavit to the response; the affidavit also failed to include Dr. Glenn's earlier assertions concerning his alleged employment relationship with Schumacher.

Then, a few weeks later, Dr. Glenn filed his responses to Hernandez's first interrogatories, in which he *affirmatively admitted* that, contrary to his previous assertions, he had *not* forwarded Hernandez's complaint to Schumacher. He also admitted that, although he had received correspondence from "Western Litigation *on behalf of Ben Hill Emergency Group, LLC*,"[5] he possessed *no* "correspondence between [him] and [Schumacher] regarding or relating to the [instant] litigation."[6]

Dr. Glenn's admissions were supported by Schumacher's responses to Hernandez's second interrogatories, in which Schumacher stated that Dr. Glenn had

---

[5] (Emphasis supplied.)

[6] Dr. Glenn's admission is consistent with the "Privilege Log" submitted by Schumacher in its responses to Hernandez's second interrogatories. The document shows that Western Litigation sent two letters to Dr. Glenn in March 2017, then sent him another letter over ten months later, on February 1, 2018, the day the trial court entered a default judgment against Dr. Glenn. The privilege log does not show that there was any correspondence between Schumacher and Dr. Glenn.

not informed Schumacher of Hernandez's claim against him, nor had Dr. Glenn forwarded Hernandez's complaint to Schumacher.

Finally, in Dr. Glenn's second supplemental brief in support of the default motion, Dr. Glenn *admitted* that, even though he had "considered" Schumacher to be his employer, he had reviewed the "Physician Agreement" attached to Schumacher's summary judgment motion and, as a result, "*it appears that Dr. Glenn was technically contracted with Ben Hill Emergency Group, LLC* [at the time of the alleged malpractice]."[7]

*Case No. A19A1535*

Following a hearing, the trial court granted Schumacher's motion for summary judgment on October 19, 2018, ruling as follows:

> After consideration of the arguments of the parties, the evidence presented, and the record as a whole, the Court finds that no issue of material fact exists regarding whether Schumacher can be held vicariously liable for the actions of Dr. Glenn. Dr. Glenn's conclusory statement in his affidavit that he [was] an "employee" [of Schumacher]

---

[7] (Emphasis supplied.)

9

is not sufficient to create an issue of fact in light of the detailed affidavit from Schumacher's corporate representative.[8]

Hernandez appeals this ruling.

> When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.[9]

With these guiding principles in mind, we turn now to Hernandez's specific claims of error.

1. Hernandez contends that the trial court erred in granting summary judgment to Schumacher, arguing that there was conflicting evidence as to whether Dr. Glenn was an employee or an independent contractor of Schumacher at the time of Dr. Glenn's alleged malpractice. This argument lacks merit.

---

[8] On December 21, 2018, the trial court vacated the October 2018 order and issued a new order with the same ruling, but which included a statement that the order was a final judgment under OCGA § 9-11-54 (b).

[9] OCGA § 9-11-56 (e).

In her brief, Hernandez argues that Dr. Glenn's initial assertions that he was employed by Schumacher conflicted with Schumacher's denial that it had ever employed Dr. Glenn. Hernandez fails to mention, however, the subsequent filings by Dr. Glenn, in which he effectively abandoned his claim that he had been employed by Schumacher and admitted that he was, instead, employed by Ben Hill at the time at issue.

Hernandez also insists that a "contract" existed between Dr. Glenn and Schumacher's "wholly-owned subsidiary[,]" i.e., Ben Hill, so that Schumacher could be vicariously liable for Dr. Glenn's negligence. While a "Physician Agreement" between Dr. Glenn and Ben Hill did, in fact, exist, there is no evidence in the record that Ben Hill was a "wholly-owned subsidiary" of Schumacher.[10] On the contrary, Schumacher presented a corporate representative's affidavit that specifically stated that Schumacher was a holding company that had never had any employees or agents, that Schumacher and Ben Hill were separate entities that were both owned by a third party holding company, and that there had never been any contractual relationship between Schumacher and either Ben Hill or Dr. Glenn. There is nothing in the record

---

[10] See *Mimick Motor Co. v. Moore*, 248 Ga. App. 297, 299 (1) (b) (546 SE2d 533) (2001) ("Bare conclusions and contentions unsupported by an evidentiary basis in fact are insufficient to oppose a motion for summary judgment.").

11

showing that Hernandez presented any competent evidence that contradicted those averments.[11]

Even so, Hernandez still insists that a jury issue exists as to whether, under the "contract" upon which she relies, Dr. Glenn was an employee or independent contractor of Schumacher, arguing that the trial court erred in finding that the contract (which expressly stated that Dr. Glenn was an independent contractor) was *determinative* of his employment status with Schumacher. As shown above, however, the trial court did not make such a finding.

---

[11] We note that, on September 5, 2018, the trial court conducted a hearing on, inter alia, Schumacher's summary judgment motion, and the trial court's order stated that the court had reached its conclusions "[a]fter consideration of the arguments of the parties, the evidence presented, and the record as a whole[.]"

Although the September 2018 hearing was not transcribed or recorded, the appellate record contains a "Narrative Transcript from Recollection by Agreement of Counsel pursuant to [OCGA §] 5-6-41 (d) and (g)[.]" That "[t]ranscript[,]" however, only provides a narrative about certain evidence tendered by Dr. Glenn in support of his default motion, which was also under consideration during the hearing. Nothing in the "[t]ranscript" addresses Schumacher's summary judgment motion or Hernandez's opposition to Schumacher's motion. It is axiomatic that,

> [w]ithout a transcript, we cannot determine whether evidentiary submissions, stipulations, or statements in place by counsel were tendered at the hearing. Therefore, we must presume that the trial court's findings are supported by competent evidence and that the court applied the appropriate standard in granting summary judgment.

*Sims v. First Acceptance Ins. Co. of Ga.*, 322 Ga. App. 361, 365 (3) (b) (745 SE2d 306) (2013) (citation and punctuation omitted).

12

Moreover, the issue presented by Schumacher's summary judgment motion was *not* whether Dr. Glenn was *either* an employee *or* an independent contractor of Schumacher. Instead, it was whether there was evidence of *any legal relationship at all* between Dr. Glenn and Schumacher that would make Schumacher vicariously liable for Dr. Glenn's negligence. As shown above, Schumacher presented uncontradicted evidence showing that no such relationship existed.

Under these circumstances, the trial court did not err in granting summary judgment to Schumacher.

2. Hernandez contends that the trial court abused its discretion in denying her request for an extension of time for her to respond to Schumacher's summary judgment motion,[12] pursuant to OCGA § 9-11-56 (f), so that she could depose Dr. Glenn and a representative of Schumacher about their employment relationship. Hernandez claims that the depositions could have "clarified the nature of the relationship" between Dr. Glenn and Schumacher, "including whether Schumacher had the right to control [Dr.] Glenn[,]" and, thus, would have added "substance" to

[12] We note that there is nothing in the record showing that the trial court actually ruled on Hernandez's OCGA § 9-11-56 (f) motion. In addition, we note that Hernandez's motion sought additional time for her to respond to Schumacher's summary judgment motion, but her brief repeatedly misrepresents it as a request for the trial court to "deny or defer the [ruling on the] motion for summary judgment[.]"

13

her claim for vicarious liability. Hernandez argues that the trial court abused its discretion in ruling upon Schumacher's summary judgment motion "without giving [her] the opportunity" to conduct the depositions.

OCGA § 9-11-56 (f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

"The granting or denial of a motion under OCGA § 9-11-56 (f) lies in the sound discretion of the trial judge and will not be reversed absent a showing of clear abuse of discretion."[13]

The record shows that Hernandez filed her OCGA § 9-11-56 (f) motion on May 22, 2018, the day her response to Schumacher's summary judgment motion was due. On appeal, Hernandez contends, inter alia, that she filed the OCGA § 9-11-56 (f) motion because the trial court had not given her the opportunity to conduct the proposed depositions. In her motion, however, Hernandez admitted that Dr. Glenn

---

[13] *Sims*, 322 Ga. App. at 367 (4) (citation and punctuation omitted).

had filed his default motion on March 12, 2018, that Schumacher had filed its summary judgment motion on April 19, 2018, and that, although the discovery period had not expired, Hernandez had not yet taken any depositions in the case. In addition, the record does not show that Hernandez had filed a motion to compel discovery or served notices to take any depositions,[14] nor does it show that Dr. Glenn ever failed to appear for a deposition. Thus, Hernandez has failed to support her claim that she had been deprived of the opportunity to conduct the allegedly necessary depositions prior to the day her summary judgment response was due.

Moreover, the trial court did not rule on Schumacher's summary judgment motion until October 19, 2018, almost five months later. There is nothing in the record, however, to show that Hernandez conducted the depositions at issue during

---

[14] Cf. *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 877-880 (1) (575 SE2d 673) (2002) (holding that the trial court abused its discretion in failing to grant an OCGA § 9-11-56 (f) motion when the plaintiffs had served discovery requests and moved to compel discovery, because it was possible that such discovery could have added "substance" to the plaintiffs' case); *McCall v. Henry Med. Center*, 250 Ga. App. 679, 685 (2) (551 SE2d 739) (2001) (holding that the trial court abused its discretion in failing to grant an OCGA § 9-11-56 (f) motion when the plaintiff had moved to compel discovery and such discovery could have added "substance" to the plaintiff's case).

that five-month period[15] or that the trial court prevented her from doing so.[16] In addition, as noted in Footnote 11, supra, there is no transcript of the portion of the September 5, 2018 motion hearing that addressed Schumacher's summary judgment motion; as a result, there is nothing to support a finding that, if Hernandez had conducted those depositions, the trial court would have refused to allow Hernandez to present evidence obtained from such depositions during that hearing.

Further, as explained in Division 1, supra, the evidence in the record demonstrates, as a matter of law, that Dr. Glenn had never been an employee, independent contractor, or agent of Schumacher and that Schumacher had no legal relationship to either Dr. Glenn or to his employer, Ben Hill. Faced with such evidence, Hernandez has not offered any basis to support a finding that further

---

[15] Hernandez claims that "Dr. Glenn had not yet been deposed in the case despite [her] efforts to depose him before the court ruled on the summary judgment motion." There is nothing in the record, however, to show any "efforts" taken by Hernandez to conduct that deposition.

[16] Although Hernandez's brief refers to motions to stay discovery filed by Schumacher in May and June 2018, there is nothing in the record to show that the trial court granted those motions or stayed discovery prior to the October 2018 hearing. In fact, in a case management order issued on October 15, 2018, the court ordered that discovery "shall be completed by May 1, 2019[,]" i.e., almost a year after Hernandez filed her OCGA § 9-11-56 (f) motion.

16

discovery would have added "substance" to her vicarious liability claim against Schumacher.[17]

Under the circumstances presented, we find no abuse of discretion by the trial court that would justify reversal of the trial court's grant of summary judgment to Schumacher.[18]

*Case No. A19A1650*

In this appeal, Dr. Glenn challenges the trial court's denial of his motion to set aside the default judgment or, in the alternative, to open default.[19] He argues that the

---

[17] See *Tuck v. Marriott Corp.*, 187 Ga. App. 567, 568-569 (2) (370 SE2d 795) (1988) (holding that, while the trial court should have ruled on the plaintiff's motion to compel before granting the defendant's summary judgment motion, "where, as here, the disallowed discovery would add nothing of substance to the party's claim, reversal is not required[ ]").

[18] See *Sims*, 322 Ga. App. at 367 (4).

[19] See OCGA § 9-11-55 (b); *Wright v. Mann*, 271 Ga. App. 832 (611 SE2d 118) (2005) ("OCGA § 9-11-55 allows a default to be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case. The four conditions are: (1) a showing made under oath, (2) an offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. Whether to open the default on one of these three grounds rests within the discretion of the trial judge. Our sole function as an appellate court reviewing a trial court's grant of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case.").

17

trial court abused its discretion in denying the default motion because, inter alia, the denial could result in inconsistent verdicts at trial. Specifically, Dr. Glenn contends that a jury could find that he was not negligent in his treatment of the decedent, which would result in a verdict in favor of Schumacher on the vicarious liability claim, but, due to the default judgment, he would still be liable for damages.

As shown above, the trial court conducted a motion hearing in September 2018, during which the court considered, inter alia, Dr. Glenn's default motion. On December 21, 2018, the trial court denied Dr. Glenn's motion to set aside the default judgment, ruling that Dr. Glenn had failed to present any credible evidence to refute or overcome the sheriff's deputy's affidavit supporting his return of service, which the court found to be credible. The court also denied Dr. Glenn's motion to open default, finding that Dr. Glenn had failed to provide his insurer with Hernandez's complaint and had failed to confirm with the insurer that it was handling the complaint on his behalf or to make any inquiry into the matter for more than a year. In addition, the court rejected Dr. Glenn's argument that failing to open the default could result in "inconsistent verdicts[,]" ruling that the argument did not provide a "reasonable explanation for [Dr. Glenn's] failure to timely answer[ ]" Hernandez's

18

complaint.[20] Based on these conclusions, the court ruled that Dr. Glenn had failed to demonstrate either excusable neglect or a "proper case" as grounds for opening the default judgment.[21] Dr. Glenn filed an application for interlocutory review, which this Court granted.

Given our Court's ruling, in Division 1, supra, that the trial court properly granted summary judgment to Schumacher based on the absence of any evidence that Dr. Glenn was employed by Schumacher, there is no longer any possibility that a jury could reach inconsistent verdicts as to these parties at trial. Nor does the grant of summary judgment to Schumacher, while Dr. Glenn remains liable for damages, constitute an inconsistent outcome in this case, because the summary judgment was not based on a finding that Dr. Glenn was not negligent in his care of the decedent, but was, instead, based on the fact that, *regardless whether Dr. Glenn was negligent*, Schumacher could not be found vicariously liable as Dr. Glenn's employer as a matter of law.

---

[20] (Punctuation omitted.)

[21] See *Samadi v. Fed. Home Loan Mtg. Corp.*, 344 Ga. App. 111, 117-118 (1) (b) (809 SE2d 69) (2017) ("[A] default may be opened under the 'proper case' analysis only where a *reasonable* explanation for the failure to timely answer exists.") (citations and punctuation omitted; emphasis in original).

Further, after conducting a thorough review of the entire record, including evidence that was not before this Court at the time of Dr. Glenn's application, we have determined that the record supports the trial court's judgment on Dr. Glenn's default motion and that Dr. Glenn's application for interlocutory review was improvidently granted. Accordingly, we hereby vacate this Court's order granting the application and dismiss this appeal.

*Judgment affirmed in Case No. A19A1535; appeal dismissed in Case No. A19A1650. Miller, P. J., and Rickman, J., concur*.